IN RE REX.

(No. 13-81-7—Decided December 31, 1981.)

*Ms. Kathleen M. Shannon,* for appellant.

*Mr. John T. Barga,* for appellee.

COLE, P.J. This is an appeal from a judgment of the Court of Common Pleas of Seneca County in a divorce wherein the trial court granted a motion by the appellee husband, Thomas F. Rex, and transferred custody of the minor children of the parties from the wife, Barbara Rex, to the husband.

The appellant and appellee were married on March 11, 1972 and divorced on January 6, 1976, two children being born of the marriage who were, at the time of the hearing in the trial court, aged eight and six respectively. The appellant-wife was granted custody by the original decree of dissolution. On June 26, 1980 the appellee filed his motion for change of custody. The trial court by entry dated February 26, 1981 granted the motion

and transferred custody to the father. The appellant now appears assigning two assignments of error which are similar in thrust and will be considered together.

"I. Under constitutional and state law, a prior custody order may be modified only where a change of circumstances has occurred and the modification is necessary to serve the best interests of the child. The decision of the trial court was inappropriate and contrary to law, in the absence of a change in circumstances having an adverse impact on the childrens' physical health or mental, moral or emotional development and was also against the manifest weight of the evidence.

"II. The decision of the trial court was arbitrary and capricious and in violation of appellant's constitutional rights under the due process clause of the fifth and fourteenth amendments of the United States Constitution and Article I, §§ 1, 2, 16 and 19 of the Ohio Constitution."

The main argument presented by appellant concerns the application of R.C. 3109.04(B) which specifically concerns the modification of prior custody orders. R.C. 3109.04(B) reads as follows:

"The court shall not modify a prior custody decree unless it finds, based on facts which have arisen since the prior decree or which were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian designated by the prior decree, unless one of the following applies:

"(1) The custodian agrees to a change in custody.

"(2) The child, with the consent of the custodian, has been integrated into the family of the person seeking custody.

"(3) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the child." ·

The mandate of the legislature is that there must be a change of circumstances since the original custody order *and* that one of the four specific requirements be met. Here one and two are inapplicable and it is necessary the court find that three applies.

The trial court in its findings of fact made the following findings:

"(2) That Barbara Rex since the final Judgment dissolving the Parties marriage, which was entered on the 6th day of June, 1976, has given birth to two illegitimate children, by separate men, Gary Rader and Stephen Hohman; said Barbara Rex is not gainfully employed and has not been gainfully employed since the Decree of Dissolution and has no pronounced plans for gainful employment in the near future;

"(3) That Barbara Rex does not believe that vitamins are necessary to the growth and development of her children; that said children since the Decree of Dissolution have had numerous colds, sore throats, and minor infections;

"(4) That the home of Barbara Rex where Byron and Aaron have resided has been visited regularly by two men and in some instances they have stayed over night with her while the two boys were in the same house; that the behavior of Barbara Rex is detrimental to the moral fiber of the home as we know and understand that concept in this society and that her behavior is detrimental to the general well-being of the children in question."

The trial court's conclusions of law were:

"(1) The children's present environment endangers their physical health and significantly impairs their emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the children;

"(2) That a change has occurred in the circumstances of the children and their custodian Barbara Rex and that the modification is necessary to serve the best interests of the children."

Essentially appellant contends that the facts as found do not support the conclusions of law or the judgment of the trial court. With this we agree.

The finding as to the appellant's belief in vitamins and that the children had colds, sore throats and minor infections is trivial and shows no factor in the existing environment of the children endangering their health. The use of vitamin supplements may or may not be advisable. There is no evidence presented to justify a conclusion the mother's philosophy on this score had any adverse effects. The existence of colds and sore throats is a common phenomenon and there is no evidence this is either abnormal or based upon any factor in the current environment. This finding has no merit.

In any event the judgment of the trial court is clearly based in its entirety upon the other findings pertaining to the conduct of the mother in having had two illegitimate children and continued association with two men. In his oral pronouncement of judgment the trial court stated:

"* * * The Court is presently prepared and able to make a decision in this case and that is that there should be a change of custody for the reason that the behavior of the mother of the children is detrimental to the moral fibers of the home and therefore would be detrimental to the welfare and general well-being of the children and provided in part three of [R.C.] 3109.04[B]. If a Court does not take this into consideration as being detrimental I don't know what in the world the Court would. I find it very difficult to rationalize away responsibilities of Courts as well as parents by virtue of selective edict and enactment through the law. We take into consideration that there are two children and there are two people in this case, a mother and a father. We

have a report in the Record that says that they are both good parents — the mother and the father — as far as the children themselves are concerned. *So, the Court addresses itself only to the question of morality of the actions insofar as the mother is concerned and that is the reason for the decision. * * *"* (Emphasis added.)

The legislature, however, has clearly provided that there must be established some damage to the physical, mental, moral or emotional development of the child as a result of something in the child's present environment, and this damage must be significant in character. In short, there must be effectively demonstrated by the record some impact upon the child's development. Here there was evidence of conduct on the part of the wife violating traditional moral concepts but we fail to find any evidence as to an adverse impact of this conduct upon the children here involved.

In *In re Burrell* (1979), 58 Ohio St. 2d 37 [12 O.O.3d 43], the Supreme Court was concerned with a similar and related issue and, at page 39, stated:

"In the absence of evidence showing a detrimental impact upon the child of the relationship established as here existing, that relationship, as a part of the child's environment, does not warrant the state in removing the child from parental custody in the best interest of that child. * * *"

This court in *Marvin* v. *Marvin* (Nov. 4, 1980), Hancock App. No. 5-80-16, unreported, stated:

"Under paragraph 3 the trial court must find a present danger to the mental, moral or emotional development of the child in his existing environment. This necessarily entails not only some moral transgression but one which presently endangers the child's moral development. Now this requires evidence, not simply suspicion, that whatever situation is established does, in fact, have a material impact upon the child. There must be

evidence of this nexus, something here totally lacking. Here the child was two years old at the time of the divorce in 1974. In 1977 he would have been five or thereabouts and social events of the adult world can have somewhat limited significance to such a child and there must be necessarily some basis for a finding he was affected by those events. * * *"

In an earlier case, *Siebeneck* v. *Siebeneck* (Jan. 5, 1979), Defiance App. No. 4-78-6, unreported, we stated:

"Under the statutory provisions as now formulated the guiding principle is still ultimately the best interest of the child but where a change of custody is contemplated as critical, affecting the child in certain specific ways and in a designated degree. The evidence must show an impact on the health or upon the development of the child; not simply a possible impact but an impact that 'significantly endangers' such health or development, and the impact must exist in the child's 'present' environment. We are therefore not concerned with possibilities which may exist in some distant future but with the actual existing situation. Moreover unless this impact affirmatively appears, the existing custody shall continue. The burden of establishing the significant damage is therefore on the proponent of change.

"We return to the key words 'endangers significantly.' The evidence actually before the trial court would show at the most a minimal and peripheral impact on a child of five.

"For this reason, we conclude there was insufficient evidence to meet the standard set forth in the statute. This is not intended to minimize the adverse possibilities which could but have not arisen or which might have been, but were not, proved. And as age, experience, and knowledge of the child increases, so will increase the possible significant development of inappropriate and socially disapproved standards of value."

In *Whaley* v. *Whaley* (1978), 61 Ohio App. 2d 111 [15 O.O.3d 136], there is an extensive survey of the law in this area and the court, at page 118, concluded:

"The third standard, that immoral conduct must be shown to have a direct or probable adverse impact on the welfare of the child in order to justify a change of custody, we believe to be the rule in Ohio. We believe it to be the better standard. While a court should not inquire into competing moral value systems, it can recognize that such moral standards do exist, and that children are harmed by being raised in immoral surroundings. With this standard the court looks not to moral systems, but to the interests of the child. A court need not classify certain conduct as a 'wicked sin' or 'mere indiscretion'; rather, it looks only to the effect, if any, the conduct has on the child."

We therefore look to the evidence before the trial court and, although we find conduct of the mother which conceivably could affect the moral development of the children, there is nothing to establish affirmatively that it has or will necessarily do so. In the absence of such evidence the court's finding that the behavior of the mother was detrimental to the general well-being of the children is not sustained.

The judgment of the trial court, being based upon insufficient evidence as to any significant present danger to the children in the areas specified by the statute must be reversed, and this court doing that which the trial court should have done, orders that the motion for change of custody be, and the same hereby is, overruled.

*Judgment reversed.*

MILLER and GUERNSEY, JJ., concur.