**Gardini v. Moyer**
*[Cite as 2 AOA 643]*

*Case No. 89-G-1499
Geauga County, (11th)
Decided March 30, 1990*

*1st Amend. U.S. Const.
R.C. 3109.04
R.C. 3321.04*

*Robert R. Melnick, Esq., 18 North Phelps Street, Suite 300, Youngstown, Ohio 44503, For Plaintiff-Appellant.*

*Edgar Boles, Esq., 36 South Franklin Street, Chagrin Falls, Ohio 44022, For Defendant-Appellee.*

FORD, J.,

Appellant Lorraine Gardini (formerly known as Moyer) and appellee, Robert Moyer were divorced on March 7, 1985. Appellant received custody of the parties' three children: Andrew (December 6, 1976), Audrey (October 27, 1978), and Brian (March 31, 1981). The parties' separation agreement stated, in pertinent part, that the "parties *** agree that they will discuss and cooperate on matters relating to the children's welfare, health and education ***." At the time of the divorce, the children were enrolled at Notre Dame Elementary School, a parochial school in Chardon, Ohio.

In October 1987, appellant ceased paying the monthly tuition bill due Notre Dame for each child. While the record does not indicate any arrearage in child support payments or alimony due, appellant claimed to be unable to pay these tuitions any longer. In May 1988, appellant began the process of starting a home instruction program for her children by completing the necessary paperwork supplied by the Geauga County Board of Education. Appellant's application was granted on June 8, 1988.

In order to organize a home instruction program, appellant was required to present a curriculum and schedule for the proposed program. Appellant was also to submit annual evaluations of the educational progress of her children. Additionally, appellant agreed that the children would be tested annually via standardized achievement tests administered by the state. At the time of the approval of her home instruction program, appellant had neither certification to teach in Ohio nor a college degree.

Ray Blair, the Superintendent of the Geauga County Board of Education, stated (in stipulated testimony) that neither he nor anyone else in the Geauga County school system ascertained appellant's credentials to teach school and said, "there is no way of evaluating individual's parent's ability to be a teacher."

Blair indicated that the Geauga County Board of Education only determines the program of studies and curriculum materials. Nevertheless, Blair noted that appellant was not qualified to teach in the Geauga County school system and lacked the requisite education to be a certified teacher in the state of Ohio.

In August 1988, appellant informed appellee of her educational plans for the children. There is conflictiing testimony regarding appellee's response. Appellee claims to have been shocked into silence at first, although he later informed appellant of his strenuous objections to the home instruction program. Appellant claims that appellee did not respond positively or otherwise. In any event, appellee filed an action in the trial court shortly thereafter requesting a change of custody, premised solely on the change of circumstances resulting from the institution of the home education program. On October 22, 1988, the trial court ordered the parties and the children to be psychologically tested and scheduled the hearing for December 30, 1988.

Appellee presented three witnesses at the December 30, 1988 hearing. The first witness was Doctor Nancy Huntsman, the court appointed psychologist who examined the parties. Dr. Huntsman, a developmental psychologist, testified extensively as to problems she found with appellant's home instruction program. Huntsman stated that she was unable to discern any particular religious or social motive for the organizing of this home instruction program and that she felt appellant's financial state might be intertwined with her motives for establishing her home instruction course.

Additionally, Huntsman informed the court that she thought that "the other component involved is [appellant's] need to have the children be very involved with her and for herself to be very involved with the children."

It was Dr. Huntsman's opinion that the home education program was potentially harmful in this instance because it would bind the children even more tightly to the educating parent and create conflicts with the non-custodial, non-educating parent. Huntsman also noted some problems in the organization of the home instruction regimen; insufficient space to study, high grades allocated despite errors in workbooks, lack of social opportunities with children the same age, loss of speech therapy for the youngest child.

Dr. Huntsman concluded her observations by stating that "home schooling represents a totally inappropriate and unconscionable decision on Ms. Gardini's part." Huntsman observed that, but for this issue, appellant was a fit and good mother. However:

"I think that if [appellant] persists in the decision [to home educate her children], it will begin to compromise her ability to be viewed as a fit and good parent.

"Q. Is it necessarily conclusive that it will make her an unfit mother?

"A. Unsuitable.

"Q. Unsuitable?

"A. In my estimation."

Huntsman concluded that "I think we can safely assume eventual significant detriment if Ms. Gardini persists in this *** [and] I think it's inevitable that eventually [the children's] achievement will suffer, probably in three to four years."

In addition to Dr. Huntsman, appellee presented two other witnesses. Appellee, himself, testified as to his objections to the appellant's proceedings, contrasting appellant's proposal with the home life he and his new wife could provide. Appellee's final witness, Susan Variakojis, an administrator for the Westlake Schools, commented on the necessary socialization process inherent in the school experience. Variakojis also spoke of the advantages of the Westlake, Ohio school system, where the children would be enrolled if they were to live with appellee.

Appellant presented two witnesses. The first, Dr. Samuel Peavy, extolled, at great length, home education programs in general and appellant's program in particular. On cross-examination, Peavy revealed that he was affiliated with the Home School Legal Defense Association and was retained by this organization to testify in this case. Appellant, herself, testified as to her belief that it was her "God given" right to home instruct her children, and further explained the curriculum requirements and advantages for the children inherent in such a program.

The trial court ruled that "the welfare of the children would be adversely affected" should they remain in appellant's custody under these circumstances and held that a "change of custody is necessary to serve the best interests of the children; that the children's present environment endangers significantly their mental, emotional, and social development." Consequently, the court's 1985 custody order

was modified to reflect that the court had ordered custody given to the husband.

Appellant has timely appealed this ruling and asserts the following assignments of error:

"1. The trial court erred to the prejudice of appellant in modifying the original decree of custody since the custodial parent has an exclusive right to direct the educational choices (including home education) of her children absent an express and unambiguous provision in a separation agreement to the contrary.

"2. The court erred to the prejudice of appellant in modifying its original decree of custody based solely on the decision of appellant to pursue a home education program, duly approved by the local public school superintendent per Ohio Revised Code Sec. 3321.04(A)(2) which results in a viable, legally recognized educational alternative.

"3. The trial court erred to the prejudice of appellant in modifying its original award of custody since the factual findings were inadequate, unsupported by the record and contravened the standards for change of custody mandated in Ohio Revised Code Section 3109.04.

"4. The court erred to the prejudice of appellant in modifying the original award of custody based solely upon appellant's home educating of her children since the Geauga County Board of Education had previously granted appellant approval to home instruct pursuant to section 3321.04(A)(2) thus negating this court's subject-matter jurisdiction under the custody statute, Ohio Revised Code Sec. 3109.04, rendering its judgment void.

"5. Trial court erred to the prejudice of appellant in modifying the original decree of custody on the basis of home education since it impermissibly interfered with the custodial parent's constitutional right to home instruct her children, under the Free Exercise Clause of the First Amendment, and Article I, Section 7 of the Ohio Constitution."

Appellant has presented five assignments of error, many with several subarguments, all of which challenge the validity of the trial court ruling. Unfortunately, the basic issues involved in this appeal periodically get lost in the prolixity of appellant's submissions.

The crux of this appeal is the issue of whether the trial court erred in modifying its original award of custody and granting custody instead to appellee. In order to have facilitated this change, the appellee was required to satisfy the requirements of R.C. 3109.04(B)(1)(c), which states that a court shall not modify its prior order unless:

"The child's *present* environment endangers significantly his physical health or his mental, moral or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change in environment to the child." (Emphasis added.)

Should appellee prevail in establishing the criteria set forth in R.C. 3109.04(B)(1)(c), he then would have to demonstrate that the best interests of the children were being taken into account, under R.C. 3109.04(C).

The trial court ruled that appellee did, in fact, meet his burden of proof specified in R.C. 3109.04(B)(1)(c) and (C) and modified its original custody order accordingly. The trial court's decision can only be reversed by this court if it is found to be an abuse of discretion.

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448; *Conner* v. *Conner* (1959), 170 Ohio St. 85; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157-158. Accord *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217.

Therefore, the question before this court is whether the trial court's decision in this case is "unreasonable, arbitrary, or unconscionable."

Appellant's first and fourth assignments of error can be discussed concurrently. In these assignments, appellant contends that it is the exclusive right of the custodial parent to direct the educational choices for her children. Appellant argues that, as the custodial parent, she has directed that her children be home educated and states that the appellee, as the non-custodial parent, has no legal right to interfere with her choice. Further, by establishing a valid home education program, appellant argues that she has followed all of the prerequisite steps for organizing a home education program and has had her proposals accepted by the Geauga County Board of Education. This acceptance by the Board, she maintains, has negated the subject matter jurisdiction of the trial court to rule on this case.

Appellant's jurisdictional argument is totally without merit. As appellee has noted, in a custody battle:

"The contending parties may be fairly presumed to be more solicitous to gratify their own interests and feelings than to develop the

whole truth, with a view to the main object of the inquiry \*\*\*. Under such circumstances, it is the duty of the judge to become [the childrens'] protector, and not only to listen to all the evidence produced \*\*\* but also to inform himself from all other legitimate sources, the better to qualify himself \*\*\*." *Boyer* v. *Boyer* (1976), 46 Ohio St. 2d 83, 86-7.

The trial court has continuing jurisdiction over children subject to a custody agreement and the court has discretionary jurisdiction to modify the custody order should circumstances so dictate. As *Trickery* v. *Trickery* (1952), 158 Ohio St. 9 states in paragraph one of the syllabus:

"Where, in a divorce action, the Common Pleas Court enters an order, concerning the custody of a child under ten years of age, that court has continuing jurisdiction with respect to the custody of the child and if subsequently there is a change of conditions that court has the discretionary power to modify its previous award of custody to the extent determined by that court to be for the best interest of the child, including change of custody from one parent to the other."

The trial court's continuing jurisdiction over the children is granted in R.C. 3105.011, which states that "[t]he court of common pleas \*\*\* has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters."

In view of this statutory mandate, appellant's argument, that the creation of a legally valid home education program under R.C. 3321.04(A)(2) divests the Geauga County Court of Common Pleas from further consideration of this issue, is simply fatuous. R.C. 3321.04 nowhere states, explicitly or otherwise, that a school board, simply by agreeing to allow a parent to home instruct his or her children, strips the court of its historically consistent role as the protector of the children's best interests in a custody dispute. Cf. *Boyer, supra*, at 86-87. Appellant has provided no case law or statutes which would provide for the hypothesized divestment of jurisdiction from the trial court. Instead, appellant relies on the assertion that once the school board has approved the home education regimen, the trial court is without jurisdiction to change custody. This argument is simply untenable.

The trial court's jurisdiction to modify the custody decree is in no way terminated by the creation of a home education program by the Geauga County Board of Education. Should the trial court find that home education is not in the best interests of the children, the surface legality of the appellant's program would not militate against a change of custody.

The other arguments raised in appellant's first and fourth assignments are similarly flawed. The question of whether appellant's home education program was validly instituted, or whether appelant, as the custodial parent, has the exclusive right to direct the educational choices of her children, are, at best, tangential to this appeal. Even assuming that such arguments have merit, they would still be unavailing if the trial court determined that a change of custody was necessary and in the best interests of the children under the auspices of R.C. 3109.04(B) and (C).

Appellant's first and fourth assignments are without merit.

Appellant's second assignment argues similar issues to those discussed in the first and fourth assignments. In her second assignment, appellant argues that the trial court erred in modifying its custody decree solely on the ground that appellant instituted a legal home education program. Again, this issue is without merit. If sufficient evidence exists to satisfy the dictates of R.C. 3109.04(B)(1)(c), the trial court could order a change of custody irrespective of the fact that appellant's children were enrolled in the best home education program ever created. If harm exists, the validity of the program is not controlling and, depending on the facts of a given case, may have little or no relevancy or probative value.

Appellant's second assignment is without merit.

Appellant's fifth assignment of error challenges the trial court's ruling on the basis that it violates appellant's rights to freely exercise her religion under the First Amendment to the United States Constitution and Section 7, Article I, Ohio Constitution. Examination of the trial court record reveals that this issued is being raised for the first time on appeal. This court cannot examine issues, even Constitutional ones, which are not raised at the trial court level. App. R. 12(A); *State* v. *Awan* (1986), 22 Ohio St. 3d 120.

However, even had the appellant timely broached the issue of her First Amendment right to freely exercise her religion, her argument would still be found to be without merit under the facts of this case. As *Birch* v. *Birch* (1984), 11 Ohio St. 3d 85 noted, "the law

does not require that a child be actually harmed or that a parent's unsuitability to have custody that the bases of her unsuitability are religious practices." *Birch, supra,* at 88. Further, the United States Supreme court has held that:

"*** (T)he family itself is not beyond regulation in the public interest, as against a claim of religious liberty.

*** (T)he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare; and *** this includes, to some extent, matters of conscience and religious conviction." *Prince* v. *Massachusettes* (1944), 321 U.S 158, 166-167, quoted in *Birch,* at 87.

If the trial court were to find, under R.C. 3109.04, that the child's present custodial situation significantly endangers his/her physical, mental emotional or moral development, it could order a change of custody, despite the fact that the endangering factor is claimed by the custodial parent to exist pursuant to the free exercise of religion. (This court, after examining the record, also notes that the appellant presented little or no evidence which would persuade that the institution of this home education program has its genesis in appellant's desire to express her religious beliefs. The trial court apparently reached the same conclusion. While we are cognizant that courts are to accord judicial deference to the veracity of religious beliefs "truly held", we are also aware of a paucity of evidence in the record which would indicate that appellant held religious views which led her to the institution of a home education program. Instead, the "right" appellant invokes, regardless of its nomenclature, is more constitutional in nature than religious. The question of whether a religious belief is "truly held" is a question of fact, and the trial court appeared to find appellant's motives to be more pecuniary and familial than religious. Had this issue been properly before this court, we would not have disturbed the trial court's resolution of this question. *State* v. *Whisner* (1976), 47 Ohio St. 2d 181, 199, citing *U.S* v. *Seeger* (1965), 380 U.S 163, 185.)

Appellant's fifth assignment is without merit.

Thus, this court is left to examine appellant's third assignment of error, which asserts that the trial court erred in modifying its custody award because the factual findings were inadequate to demonstrate that actual present harm was being suffered by the children. Appellant argues that the non-custodial parent must show more than a change in the custodial parent's circumstances. *Davis* v. *Davis* (Apr. 7, 1987), Green App. No. 86CA16, unreported. Instead, the non-custodial parent must show that the "present environment significantly endangers the child's physical, mental, emotional, or moral development." *Davis, supra,* at 10 (citations omitted). See, also R.C. 3109.04(B)(1)(c); *In re Rex* (1981), 3 Ohio App. 3d 198. "A change of custody must be based on something more than speculative future harm." *Davis,* at 10; *Whaley* v. *Whaley* (1978), 61 Ohio app. 2d 111 (further citations omitted). See, also, *Bansky* v. *Bansky* (Sept. 11, 1987), Trumbull App. No. 3783, unreported.

In *Bansky, supra,* appellee premised his motion for a change of custody on the appellant's cohabitation with a man two years before the hearing and upon an allegation that the appellant's frequent changes of residence were proving detrimental to the child. Appellee argued that, even though the statute required that the child's present harm be considered, the trial court could consider circumstances occurring within a reasonable time before the hearings, citing *Walker* v. *Walker* (1974), 40 Ohio App. 6. This court, in reversing the trial court's change of custody decree, focused on the R.C. 3109.04 mandate that the movant demonstrate significant present environmental harm. *Bansky,* at 7-8. Absent the presentation of sufficient evidence to satisfy the statutory burden of proof by the movant, a change of custody decree cannot be rendered.

Similarly, examination of the trial court record leads this court to reluctantly determine that the appellant's third assignment has merit. The trial court's conclusions were based primarily, if not solely, on the testimony of Dr. Huntsman, who concluded that she thought it was "inevitable that *eventually* (the children's) achievement will suffer, *probably in three to four years*." (Emphasis added.) Nothing in Huntsman's testimony indicates that the children are suffering present harm as a result of the institution of the home education program, and the statute does not make provisions for anticipatory harm at some future point. Although it appears unfortunate to return the children to appellant's custody, given the evidence in the record which suggests that the home education program will have eventual detrimental consequences, this court is constrained to follow the plain meaning of the statute. As a result, we find that the change of

custody by the trial court was an abuse of discretion as there was no evidence, as a matter of law, which would satisfy the dictates of R.C. 3109.04(B)(1)(c).

Appellant's third assignment of error has merit.

The decision of the trial court regarding the modification of custody is reversed for reasons given and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

CHRISTLEY, P.J.,
Concurs with Concurring opinion

LYNCH, J., Ret.,
sitting by assignment,
concurs.

CHRISTLEY, P.J.,

In my concurrence, I feel it necessary to re-emphasize that this case has nothing to do with freedom of religion as claimed in the fifth and sixth assignments of error. It is not even readily discernable from the record what religion Mrs. Gardini is or if she even attends church. The psychologist's observation that appellee's motivation was other than religious belief is well taken.

My primary point, however, is to offer the following observations on the third assignment of error. Although the psychologist clearly forecasts inevitable harm to the children, she based that opinion on the wrong premise. Her testimony did not particularize itself to the individual children involved. Rather, she issued a rather broad indictment of home education *per se* and particularly as it related to children of a divorce. She viewed it as a potential weapon to be used by a custodial parent to further alienate the non-custodial parent from the children.

Further the psychologist acknowledged an absence of any professional dealings or familiarity with either other home educated children, or knowledge of any achievement or psychological studies of home educated children. Thus, her testimony as to a potential prognosis for these specific children, however credible as a general theory, must be viewed as lacking a proper foundation sufficient to satisfy the threshold requirement of R.C. 3109.04(B)(1)(c).

The situation is analogus to those cases involving a sexually active custodial parent.

Although a generalized statement can be made that a child's awareness of a parent's paramour relationship is likely to be distressing, and therefore harmful, that prognosis alone is insufficient. No change of custody can be premised on that type of proposition without a *specific* showing that the child in question is being materially and adversely affected. *Wyss* v. *Wyss* (1982), 3 Ohio App. 3d 412. If some contemporaneous showing of harm is not made, then at least some specific, *individualized* showing is required which would of demonstrate that the seeds of future behavior are being sown in soil that is certain to produce damaged plants.

Thus, in the instant case, the psychologist's testimony was to the effect that although she was unfamiliar with any documented studies referencing home education, she was generally opposed to the concept because, she theorized, it would have a detrimental effect on the development of normal socialization skills. Further, she felt that children of divorce would be particularly vulnerable.

No testing or other validation exercise known to her or done by her of the children involved here demonstrated that her general theory would hold true for these specific children. In other words her "professional opinion" was unsupported except for the most general applications.

*Present* endangerment must be demonstrated in relation to the specific child, not some theoretical class of children. That was not done here, rather the psychologist's opinion was to all effects and purposes, an indictment of home education *per se*. And, per the record before us, a foundation for such an opinion did not exist.

It may well be that this court agrees with the psychologist and the trial judge in their conclusion that pursuing a home education under the circumstances of this case is an extraordinarily selfish course of action and *could* lead to heartbreaking future problems. However, that conclusion does not meet the standard set by the legislature.

That is not to say that appellee is forever barred from raising this issue. Within time frames that would be consistent with providing valid test results, appellee would certainly be within his rights to monitor and validate the educational, social and psychological progress and development of his children. Should such results show that the generalized forecast of

harm has begun to manifest itself in any of the children, then the trial court would be well justified in considering a modification of custody.