{¶ 1} This case is before the court on appeal from a judgment of the Huron County Court of Common Pleas, Domestic Relations Division, which named appellee, Keith A. Lynch, the residential parent and legal custodian of his minor son, Marcus. Appellant, Colleen A. Lynch, appeals that judgment and asserts the following assignments of error:
 {¶ 2} "I. The trial court erred to the prejudice of the appellant mother in applying the reproval of mother standard where there was no evidence to show that mother's conduct had a detrimental impact upon the child.
 {¶ 3} "II. The magistrate erred in awarding custody to appellee-father where mother was the de facto custodian of the child and the appellee failed to demonstrate a change of circumstances and that it was in the child's best interest that appellee be designated as his custodial parent.
 {¶ 4} "III. The trial court erred to the prejudice of the appellant in concluding that the award of custody to the appellee was in the child's best interest.
 {¶ 5} "IV. The trial court erred in adopting the magistrate's decision where no record was made of the in camera interview with the child.
 {¶ 6} "V. The magistrate erred as a matter of law in considering the custodial preferences of the child as set forth in Dr. Torppa's report in contravention of R.C. 3109.04(B)(3)."
 {¶ 7} The marriage of appellant and appellee was dissolved by decree on January 13, 1994. Appellant was named residential parent and legal custodian of Marcus in the decree. However, on November 16, 1994, the trial court adopted the shared parenting plan submitted by the parties. This plan was still in effect when appellant filed her motion to modify parental rights and responsibilities in November 2000. In response, appellee filed his own motion to modify. Each parent asked to be named residential parent and legal custodian of their minor son.
 {¶ 8} Because Marcus was diagnosed with attention deficit/hyperactivity disorder, as well as other behavioral problems, the domestic relations court ordered psychological evaluations for both parents and their child. Alan Torppa, Ph.D., performed the evaluations, submitted a report and testified at the hearing on the parties' motions. In addition, upon appellant's request, the magistrate assigned to hear this case conducted an in camera interview with Marcus.
 {¶ 9} Based upon the evidence adduced at the hearing, including the testimony and report of Dr. Torppa, the magistrate ordered the termination of the parties' shared parenting plan and found that it was in the best interest of Marcus to name appellee residential parent and legal custodian of his minor son. The trial court affirmed and adopted the magistrate's decision. Appellant filed timely objections. These objections were overruled by the trial court. This appeal followed.
 {¶ 10} Because it questions the standard applied by the trial court in determining the allocation of parental rights and responsibilities, we shall first consider appellant's Assignment of Error No. II.
 {¶ 11} The testimony of the parties revealed that, due to certain circumstances occurring in his life at the time, appellee allowed Marcus to make his primary residence with appellant for the two years immediately preceding the hearing on this matter. Appellant thus argues that she was the "de facto" custodian of her son and that the question before the court was the modification of the allocation of parental rights and responsibilities. Consequently, she asserts, in essence, that the domestic relations court erred in failing to apply the standard found in R.C. 3109.04(E)(1)(a). We disagree.
 {¶ 12} R.C. 3109.04(E)(1)(a) allows modification of a custody order when "a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and modification is necessary to serve the best interest of the child." Nevertheless, where the issue is the termination of an existing shared parenting decree, R.C. 3109.04(E)(2)(c) provides that the court may do so if shared parenting is not in the best interest of the child. In such an instance, the moving party does not need to demonstrate a change of circumstances. Deimling v. Messer (Mar. 16, 1998), Clermont App. No. CA97-07-070 (citations omitted).
 {¶ 13} Here, it is undisputed, and in fact was stipulated to by the parties, that this cause involved the termination of a prior shared parenting plan. Therefore, the trial court properly determined whether to terminate that shared parenting plan by ascertaining the best interest of Marcus. Accordingly, appellant's Assignment of Error No. II is found not well-taken.
 {¶ 14} In her Assignment of Error No. IV, appellant maintains that the trial court's judgment is in error because no record was made of the magistrate's in camera interview with Marcus. Appellant relies on Donovanv. Donovan (1996), 110 Ohio App.3d 615, 620, for the proposition that a record of the interview was required in this case.
 {¶ 15} R.C. 3109.04(B)(2)(c) provides that an interview of a child in matters regarding the allocation of parental rights and responsibilities "shall be conducted in chambers and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview."
 {¶ 16} Based upon the inclusion of "any necessary court personnel" in the statute, the Fifth District Court of Appeals concluded that this section requires, upon the timely request of either party, the presence of a stenographer and/or other recording device to record the in camera interview of the child for possible appellate review. Patton v. Patton
(1993), 87 Ohio App.3d 844, 846. Even though the Twelfth District Court of Appeals ostensibly followed Patton in Donovan v. Donovan,110 Ohio App.3d at 620, it expanded the rule set forth therein to require a record of all in camera interviews of children in custody proceedings. We have not, however, espoused this view.
 {¶ 17} This court, as well as other Ohio courts of appeals, follow the rule set forth in Patton by requiring that a record be made only upon a timely request. See Bowman v. Bowman (Mar. 19, 1997), Medina App. No. 2574-M (Ninth Appellate District); Carlin v. Carlin (Mar. 29, 1996), Williams App. No. WM-95-023 (Sixth Appellate District); and In re BrandonC. Reed (Dec. 20, 1995), Greene App. No. 95-CA-56 (Second Appellate District). Appellant, who requested the in camera interview, never asked that such a record be made. Therefore, her Assignment of Error No. IV is found not well-taken.
 {¶ 18} In Assignment of Error No. V, appellant contends that prejudicial error occurred when the trial court/magistrate considered Marcus's custodial preferences as set forth in Dr. Torppa's psychological evaluation of the child. Appellant claims that this consideration violates R.C. 3109.04(B)(3).
 {¶ 19} R.C. 3109.04(B)(3) prohibits a court, in determining a child's best interest for the purpose of allocating parental rights and responsibilities, from accepting or considering "a written or recorded statement or affidavit that purports to set forth the child's wishes and concerns regarding those matters."
 {¶ 20} Initially, we note that appellant failed to object to the admission of Dr. Torppa's evaluation of Marcus into evidence or to the psychologist's testimony at trial, which indicated that Marcus expressed a "mild preference" to live with his mother. A party's failure to object to the receipt or use of evidence when the alleged error could be remedied waives that party's right to address that issue on appeal. Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207; Mallin v. Mallin (1988),44 Ohio App.3d 53, 54-55.
 {¶ 21} Moreover, the references in the trial court's findings of fact as to the preference expressed by Marcus to Dr. Torppa are set forth in the context of the court's in camera interview with the child. Our review of those findings reveals that the domestic relations court reached its conclusion concerning Marcus's preference as to a custodial parent, and a determination to give any expressed preference "little weight," based upon that interview and not upon any preference stated in the psychologist's report. We therefore conclude that the court below did not impermissibly consider a written statement concerning this child's wishes and concerns in allocating parental rights and responsibilities. Accordingly, appellant's Assignment of Error No. V is found not well-taken.
 {¶ 22} Appellant's Assignment's of Error Nos. I and III address the issue of whether the trial court erred in finding that it was in Marcus's best interest to name appellee his residential parent and legal custodian.
 {¶ 23} In determining custody matters, a trial court is vested with broad discretion and will be reversed only upon a showing of an abuse of that discretion. Pater v. Pater (1992) 63 Ohio St.3d 393, 396. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} When a court terminates a shared parenting plan, it determines the allocation of parental rights and responsibilities under the standards of R.C. 3109.04(A)(B) and (C). Therefore, and as previously stated, the trial court's primary concern is the child's best interest. R.C. 3109.04(F)(1). The court must consider all relevant factors related to the children's best interest, including, but not limited to, those factors specified by R.C. 3109.04(F)(1).[1]
 {¶ 25} In Assignment of Error No. I, appellant singles out one of the magistrate's numerous findings of fact related to the best interest of Marcus in order to argue that the trial court impermissibly applied the "reproval of Mother standard" in awarding legal custody of Marcus to appellee.
 {¶ 26} Finding of Fact No. 69 reads:
 {¶ 27} "Since the parties' divorce[2], Mother has had eight (8) pregnancies by five (5) men and has had five (5) abortions; further, Mother has had over twenty (20) job changes as an adult and is presently thirty-four (34) years of age."
 {¶ 28} While we agree that a domestic relations court cannot determine the allocation of parental rights and responsibilities based on the conduct of either parent, see Inscoe v. Inscoe (1997),121 Ohio App.3d 396, 414, we do not agree that the trial court did so in this instance.
 {¶ 29} A review of the findings of fact in their totality reveals that the magistrate did not consider Finding of Fact No. 69 in isolation and base its decision on that finding. Cf. In re Rex (1981),3 Ohio App.3d 198. Instead, this fact was used, among many others, to determine the stability of each of the party's households. For example, although Marcus is a gifted child, he has attention deficit disorder, as well as certain other behavioral problems. The trial court correctly found that it was appellee who sought diagnostic testing, counseling and medication to aid Marcus in overcoming his problems. In addition, appellee has stable employment. Appellant was not working at the time of the hearing because she recently gave birth to another child. These, plus other facts found by the trial court all support the finding that appellant's home offered less stability and structure to Marcus. For this reason, the trial court did not apply the wrong standard in determining the best interest of the child, and appellant's Assignment of Error No. I is found not well-taken.
 {¶ 30} In Assignment of Error No. III, appellant asserts that in determining the best interest of the child, the trial court erred in failing to consider the impact of a change of schools would have on Marcus. She also contends that the trial court erred in failing to accord sufficient weight to a stated preference that Marcus wished to reside with his mother.
 {¶ 31} Because no evidence was offered to show that a change of schools would have any impact on the best interest of Marcus, any consideration on the part of the trial court of this fact would be pure speculation. More importantly, even though consideration of a single factor in isolation may suggest a certain result, it is incumbent on the trial court to consider all of the factors and determine what, on the whole, is in the best interest of a child. Terwilleger v. Cole-Robinson
(Feb. 4, 2000), Paulding App. No. 11-99-10. Here, the court considered all of the relevant factors set forth in R.C. 3109.04(F)(1).
 {¶ 32} Furthermore, the court fully explained the basis for according little weight to Marcus's preference to live with his mother. Specifically, the court found that even though Marcus expressed a preference to live with his mother, he also expressed a wish to reside with his father. This vacillation plus any "parent-specific" reason for his preferences and the fact that at least one parent engaged in a discussion about the in camera interview with Marcus, were the bases for the trial court's decision. Therefore, we cannot say, based upon the trial court's consideration of the best interest factors as a whole, that this determination was an abuse of the trial court's discretion.
 {¶ 33} For the foregoing reasons, appellant's Assignment of Error No. III is found not well-taken.
 {¶ 34} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Huron County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] R.C. 3109.04(F)(1), reads as follows:
"In determining the best interest of a child pursuant to this section, whether an original decree allocating parental rights and responsibilities or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
"(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation.
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court.
 "(g) Whether either parent has failed to make all child support payments, including arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor.
 "(h) Whether either parent has previously been convicted of or pleaded guilty to any criminal act that resulted in a child being an abused or neglected child; whether either parent, in a case in which a child has been adjudicated an abused or neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25
of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding, and caused physical harm to the victim in the commission of the offense; whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child.
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent to his or her right to visitation in accordance with an order of the court.
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
[2] We note that appellant is correct when she asserts that the exact time frame for her eight pregnancies was not established. The remainder of the court's finding is, however, factually correct.