[Cite as *Davis v. Davis*, 2012-Ohio-418.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### CLARK   COUNTY

NEAL DAVIS                              :
                                       :        Appellate Case No. 2011-CA-71
      Plaintiff-Appellee             :
                                       :        Trial Court Case No. 10-DR-738
v.                                     :
                                       :
ELLEN DAVIS                            :        (Civil Appeal from Common Pleas
                                       :         Court, Domestic Relations)
      Defendant-Appellant            :
                                       :

. . . . . . . . . .

## O P I N I O N

Rendered on the ____3rd____ day of ____February____, 2012.

. . . . . . . . . .

JON A. DOUGHTY, Atty. Reg. #0024869, 39 North Fountain Avenue, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

ELIZABETH J. HENLEY, Atty. Reg. #0034207, Talbott Tower, Suite 1205, 131 North Ludlow Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}  Ellen Davis appeals from the trial court's final judgment entry and divorce decree that among other things divided the parties' property and designated appellee Neal Davis as legal custodian and residential parent of their children.

{¶ 2}   Ellen advances five assignments of error on appeal.[1] First, she contends the trial court erred in its custody determination by giving insufficient weight to her role as primary caretaker of the children. Second, she claims the trial court abused its discretion in designating Neal as legal custodian and residential parent. Third, she asserts that the trial court erred by finding her solely responsible for repaying a loan from her sister. Fourth, she argues that the trial court erred by using the final hearing date as the marriage termination date. Fifth, she maintains that the trial court erred by making her liable for half of any mortgage and property-tax deficiency.

{¶ 3}   The record reflects that the parties married in 1998. They had four children together. The children were born in 1998, 2000, 2002, and 2004. After discovering that Neal had engaged in a lengthy affair, Ellen moved to New York and began a new job there. Neal remained in Ohio with the parties' children.[2] He filed for divorce in July 2010 and obtained temporary custody of the children. The matter proceeded to a two-day final hearing before a magistrate on March 28, 2011, and May 3, 2011. Following the hearing, the magistrate filed a May 16, 2011 judgment entry and divorce decree. The magistrate named Neal as the legal custodian and residential parent of the children and awarded Ellen visitation. The magistrate also ordered the marital residence, which had negative equity of $44,000, to "go into foreclosure." It further ordered the parties to share equal responsibility for any mortgage deficiency and delinquent real-estate taxes. In addition, the magistrate found that Ellen had agreed to be responsible for repaying a $10,000 loan from her sister. Finally, the magistrate resolved numerous other issues

---

[1] For purposes of clarity, we will refer to the parties by their first names.

[2] The circumstances surrounding Ellen's move to New York and Neal's residence in Ohio are disputed and will be addressed more fully infra.

that are not relevant to this appeal.

{¶ 4} Ellen filed objections and supplemental objections to the magistrate's ruling. She challenged, inter alia, the magistrate's custody determination, the finding that the parties should share responsibility for any mortgage deficiency and delinquent real-estate taxes, and the finding that she was responsible for repaying the $10,000 loan from her sister. The trial court sustained Ellen's objections in part, and overruled them in part, in an August 29, 2011 ruling. The trial court overruled the objections insofar as they related to Neal's designation as legal custodian and residential parent. The trial court also overruled the objections insofar as they addressed liability for back real-estate taxes and Ellen's obligation to repay the loan from her sister. This appeal followed.

{¶ 5} In her first assignment of error, Ellen contends the trial court erred by giving insufficient consideration to her role as primary caretaker of the children. In support, Ellen cites evidence that she bore primary responsibility for the day-to-day supervision and care of the parties' children while she and Neal were together. Ellen argues that the trial court failed to give this evidence "the proper weight that it deserved."

{¶ 6} Although the record supports Ellen's claim that she served as the primary caretaker of the children when she resided with Neal, her argument about the proper weight of that evidence is unpersuasive. On appeal, Ellen stops short of claiming that a primary caretaker has an absolute right to be designated as legal custodian and residential parent. Relying on a 1982 opinion from this court, however, she does assert  that "'where one parent can demonstrate with regard to a child of tender years that he or she is clearly the primary caretaker parent, then the court must further determine only whether the primary caretaker is a fit parent.'" *In re Maxwell*, 8 Ohio

App.3d 302, 306, 456 N.E.2d 1218 (2d Dist.1982), quoting *Garska v. McCoy*, 278 S.E.2d 357, 363 (W.Va.1981). Because she had served as the primary caretaker for the parties' children and was a fit parent, Ellen reasons that the trial court should have designated her as legal custodian and residential parent. (See Appellant's brief at 2-4).

{¶ 7}   We disagree. The record reflects that the magistrate and the trial court both took into consideration the fact that Ellen had served as primary caretaker before her move to New York. The magistrate and the trial court also considered the fact that Neal began serving as the primary caretaker after Ellen's move to New York. At the time of the trial court's final judgment and divorce decree, Neal had served as the primary caretaker for more than nine months. The weight to be given to the parties' respective periods of time as primary caretaker was a matter for the trial court to decide in the exercise of its discretion. Contrary to Ellen's argument on appeal, her role as primary caretaker while residing with Neal was not necessarily entitled to "extra" weight.

{¶ 8}   To be sure, "[t]he primary caregiver of a child is an important factor to be considered  in the initial allocation of parental rights." *Chelman v. Chelman*, 2d. Dist. Greene App. No. 2007 CA 79, 2008-Ohio-4634, ¶ 43, citing *Maxwell*. "However, a party's role as the primary caregiver is not given presumptive weight over other relevant factors." *Id.* at ¶ 43. Where, as in the present case, both parents have served as primary caregiver at different times, a trial court has discretion to designate the father as legal custodian and residential parent if other evidence preponderates in his favor regarding the best interest of the children. *Williams-Booker v. Booker*, 2d Dist. Montgomery App. Nos. 21752, 21767, 2007-Ohio-4717, ¶ 13-16.

{¶ 9}   In the present case, the trial court gave adequate consideration to Ellen's role as

primary caregiver. It simply found that Neal had filled the same role and that the best interest of the children would be served by designating him as legal custodian and residential parent. Because the trial court did not fail to give proper consideration to Ellen's role as primary caregiver, her first assignment of error is overruled.

{¶ 10} In her second assignment of error, Ellen claims the trial court abused its discretion in designating Neal as legal custodian and residential parent. In support of her argument, Ellen challenges the trial court's assessment of the statutory best-interest factors applicable to custody determinations. Ellen argues that the only factor weighing against her was "her move, or desire to move, to New York." She asserts that the trial court abused its discretion by denying her custody based on her non-residence, or potential non-residence, in Ohio.

{¶ 11} "When custody has never been litigated, the parties stand on equal footing regarding allocation of parental rights and responsibilities. (Citations omitted). *Brewer v. Brewer*, 2d Dist. Darke App. No. 2010 CA 17, 2011-Ohio-1275, ¶ 26. "The child's best interest is the sole issue, and it is evaluated using the non-exclusive list of factors set forth in R.C. 3109.04(F)(1)." *Id.* These factors "relate primarily to the health and well being of the child and the parents." *Meyer v. Anderson*, 2d Dist. Miami App. No. 01 CA53, 2002-Ohio-2782. Although a trial court is required to consider these factors, it retains broad discretion in making a best-interest determination. *Id.* We review its determination for an abuse of that discretion. *In re D.W.*, 2d Dist. Montgomery App. No. 21630, 2007-Ohio-431, ¶ 13.

{¶ 12} In the present case, the magistrate addressed the R.C. 3109.04(F)(1) best-interest factors in some detail. (Doc. #65 at 4-10). The magistrate's written decision demonstrates that those factors did not weigh heavily in either party's favor. Despite the parties' complaints about

one another, the magistrate's findings suggest that either parent could care for the children. Although Ellen had been the primary caretaker, the magistrate noted that Neal more recently had served in that capacity. On appeal, Ellen suggests that Neal obtained temporary custody of the children, and sole occupancy of the marital residence, through deception. She contends he agreed to move to New York with her. Shortly after their arrival, she claims he snuck the children back to Ohio and filed for divorce, leaving her abandoned in New York and waiting for him to return. Ellen argues that this behavior militates against awarding Neal legal custody.

{¶ 13} Although Ellen's hearing testimony is consistent with her version of events, Neal told a different story. He testified that the parties took a trip to New York that was supposed to be a two-week vacation. According to Neal, however, Ellen refused to return to Ohio and declared that she was staying in New York and keeping the children with her. Feeling that he had been misled, and believing that he had no other option, Neal explained that he returned to Ohio with the children and filed for divorce. The magistrate addressed the issue in his decision, finding Neal's story the most credible. The magistrate explained:

{¶ 14} It is noted that before this trip [to New York] Ellen had her mail forwarded. However, none of the utilities at the marital residence were disconnected, the marital residence was not listed for sale, they did not pack more than that necessary for two weeks and none of the children's school records were forwarded to Rochester.

{¶ 15} * * *

{¶ 16} It looks to this trier of fact like the parties before the trip had contemplated and discussed a move to Rochester. However, Ellen, once in New York basically forced the issue by making a unilateral decision to remain in New York with the children. So basically Neal could

take it or leave it. He left. (Doc. #65 at 10).

{¶ 17} The magistrate expressed "great concern" about Ellen having made "a unilateral decision to relocate children whom have lived their whole life in Ohio." (*Id*.). Although Ellen disputes Neal's version of events, the record contains evidence supporting the magistrate's findings, with which the trial court agreed. Contrary to Ellen's argument on appeal, her decision or desire to move to New York was not the only best-interest factor supporting the magistrate's and the trial court's decision.

{¶ 18} Ellen complains about the condition of the marital residence after she moved out, but the magistrate found that it had been cluttered during her occupancy. This finding is supported by hearing testimony that neither party was a good housekeeper. Ellen's evidence did not compel a finding that living conditions were so poor under Neal's control that they posed a health or safety hazard to the children and required an award of custody to her. Notably, one of Ellen's witnesses, who testified about the disarray inside Neal's home, acknowledged that she still allowed him to watch her children at his house. We find no abuse of discretion in the trial court's treatment of this issue.

{¶ 19} Ellen also complains about the children's school-attendance record. The magistrate and the trial court took that record into account, along with the children's generally positive academic performance, behavioral records, and extracurricular activities. Once again, we see no abuse of discretion in the trial court's evaluation of this issue.

{¶ 20} Ellen further asserts that Neal had failed to facilitate her visitation and contact with the children when he had temporary custody. Although this may be true, the magistrate found that the relationship between the parties was strained and that neither party appeared committed to

honoring visitation. This factual determination, with which the trial court agreed, is not an abuse of discretion. The record contains evidence that Ellen was "nasty" during visitation exchanges and told Neal, in the presence of the children, that she wished he would die.

{¶ 21} In short, the record reveals that the magistrate considered each of the statutory best-interest factors and made findings about them. The magistrate then opined: "[A]fter considering the statutory factors and the facts * * * along with the evidence submitted on Ellen and Neal's parenting skills, the relative strengths and weaknesses of each of the parents, and after placing the appropriate weight upon each factor, under the circumstances it is determined by a preponderance of the evidence that the children's development and best interest would be better served with Neal being designated as the legal custodian and residential parent." (Doc. #65 at 11).

{¶ 22} For its part, the trial court properly considered each of Ellen's objections regarding the custody determination, reviewed the evidence de novo, and agreed with the magistrate that designating Neal as legal custodian and residential parent was in the best interest of the children. Based on our review of the record, we cannot say the trial court abused its discretion in reaching that conclusion. Accordingly, Ellen's second assignment of error is overruled.

{¶ 23} In her third assignment of error, Ellen asserts that the trial court erred by finding her solely responsible for repaying the $10,000 loan from her sister. During the final hearing, Ellen testified that she borrowed the money during the marriage to pay off marital debt on a high-interest credit card.

{¶ 24} In his decision, the magistrate found that Ellen had agreed to be solely responsible for repaying the loan. The magistrate based this finding on Ellen's "yes" response when asked whether she intended to repay the loan. (May 3, 2011 transcript at 17). The magistrate also found,

incorrectly, that Ellen had borrowed the money after the parties' separation. In reality, she had borrowed the money while the parties were residing together. For its part, the trial court characterized the magistrate's interpretation of Ellen's affirmative response as "logical." The trial court then added: "Assuming, arguendo, that Ms. Davis' intention was to request that Mr. Davis contribute towards the payment of these monies, upon conducting a de novo review of the record of these proceedings, the Court finds that it is not fair or equitable to obligate him to do so anyway, based upon the totality of the credible evidence." (Doc. #81 at 9).

{¶ 25} Upon review, we are unconvinced that Ellen's affirmative response when asked whether she intended to repay the loan meant that she consented to being solely responsible for the debt. We find it more likely that Ellen simply meant the loan remained an outstanding obligation that needed to be paid, along with the parties' other debts. In any event, the trial court's alternative finding that Ellen alone should bear responsibility for the debt to her sister is not an abuse of discretion. Although the trial court did not specify why it would be "inequitable" for Neal to share in repaying the debt, the record contains evidence to support such a finding.

{¶ 26} The record reflects that Ellen deposited $9,600 of the borrowed money into a savings account in her name only. (May 3, 2011 transcript at 74). She did so without mentioning the deposit to Neal, who lacked any access to the account statements. (*Id*. at 73-74). Ellen testified that she used the money to pay off a high-interest Bank of America card. (*Id.* at 16). She presented no physical evidence, however, such as a monthly statement establishing that the Bank of America credit-card debt existed or that she used the money to pay it off. Although the issue is perhaps a close one, we cannot say the trial court abused its discretion in finding Ellen solely responsible for repaying her sister. The third assignment of error is overruled.

**{¶ 27}** In her fourth assignment of error, Ellen argues that the trial court erred by using the final hearing date as the marriage termination date. She contends the trial court should have used the earlier date that Neal filed for divorce as the de facto termination date. Ellen claims the termination date matters because Neal enjoyed exclusive occupancy of the marital residence during the pendency of the divorce proceeding and failed to pay the mortgage or real-estate taxes. Under these circumstances, Ellen reasons that the trial court should have used the date of the divorce complaint as the de facto marriage termination date, making Neal solely responsible for the mortgage deficiency and unpaid taxes.

**{¶ 28}** "R.C. 3105.171(A)(2) defines 'during the marriage' as the time from the date of the marriage through the date of the final hearing. If the court finds that using either of these dates would be inequitable, the court may select dates that it considers 'equitable' in determining marital property." *Clemens v. Clemens*, 2d Dist. Greene App. No. 07-CA-73, 2008-Ohio-4730, ¶ 19. We review a trial court's selection of a marriage termination date under R.C. 3105.171 for an abuse of discretion. *Id.* at ¶ 18.

**{¶ 29}** In the present case, the magistrate adopted May 2, 2011, the last day of the final hearing, as the marriage termination date. (Doc. #. 65 at 28). Ellen did not object to this aspect of the magistrate's decision, which the trial court adopted. Civ.R. 53(E)(3)(d) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." By failing to object below, Ellen forfeited her argument regarding the marriage termination date. Her fourth assignment of error is overruled.

**{¶ 30}** In her fifth assignment of error, Ellen maintains that the trial court erred by making

her liable for half of any mortgage deficiency and delinquent property-tax obligation. Under the circumstances, Ellen contends an equal division of these obligations was not equitable. She notes that after Neal filed his divorce complaint on July 29, 2010, he obtained temporary custody of the children and enjoyed sole occupancy of the marital residence. From that time up to the final hearing, Neal made just one mortgage payment and apparently fell behind on the property taxes. Because Neal had exclusive possession of the marital residence, and because Ellen allegedly had her own housing expenses during that time, she clams the trial court erred in making her responsible for half of any mortgage deficiency and real-estate tax delinquency. Finally, Ellen interprets the trial court's divorce decree as obligating her to pay half of the mortgage and property taxes indefinitely, even after finalization of the divorce.

{¶ 31} Upon review, we are unpersuaded by Ellen's argument. As set forth more fully above, Ellen voluntarily vacated the marital residence in July 2010 and took a job as a registered nurse in New York. That same month, Neal filed for divorce. Throughout the pendency of the divorce proceedings, Neal received disability benefits due to an on-the-job injury he had suffered. He also received a small Veteran's Administration benefit. At the time of the final hearing, the parties owed approximately $139,000 on the marital residence, which had a  fair market value of only $95,000, resulting in negative equity of $44,000. Neal made only one mortgage payment from August 2010 through March 2011, and the mortgage was six or seven payments in arrears at the time of his final-hearing testimony. During this time, Ellen did not give Neal any money (beyond child support) to pay his housing expenses. The trial court's final judgment and divorce decree ordered the parties to proceed with foreclosure, an order that has not been challenged on appeal.

{¶ 32} Although Neal enjoyed sole occupancy of the marital residence after Ellen moved to New York in July 2010, the trial court did not abuse its discretion in finding it equitable for the parties to split any post-foreclosure mortgage deficiency and real-estate taxes owed. The bulk of the parties' negative home equity cannot be attributed to Neal's relatively brief non-payment of the mortgage after Ellen left the home. According to Ellen's testimony, Neal made one payment on his own, which reduced the mortgage balance to roughly $138,000. (May 3, 2011 hearing transcript at 18). This means the parties had roughly $43,000 in negative equity *before* Neal's missed payments. His failure to make six or seven monthly payments resulted in the mortgage balance rising to $139,000. (*Id*.). Even if they had been made, it is apparent that those missed payments would have had little impact on the $44,000 in negative equity. To the extent the parties were "upside down" on their mortgage, the situation plainly existed before Ellen moved to New York. Therefore, requiring her to share equally in paying any mortgage deficiency was not an abuse of discretion.

{¶ 33} With regard to the real-estate taxes, the record does not reveal the extent of the non-payment, if any. Ellen's only argument is that she should not be responsible for property taxes incurred while Neal enjoyed sole use of the residence, particularly in light of the fact that she had her own housing expenses. Once again, we see no abuse of discretion in the trial court's finding that Ellen should share any delinquent real-estate tax obligation. Although Neal obtained a court order giving him exclusive use of the marital residence after he filed for divorce, Ellen already had voluntarily left the residence and moved to New York. The trial court characterized Ellen's decision to move as a "unilateral" one. In light of her decision, which left Neal in the marital residence, the trial court reasonably could find that Ellen should share responsibility for the

property taxes. This is particularly true given Ellen's failure to present any evidence of the nature and extent of her own housing-related expenses in New York, where she resided with her parents.

**{¶ 34}** Finally, we are unpersuaded that the trial court's ruling obligates Ellen to pay the mortgage and real-estate taxes "forever," as she asserts on appeal. Contrary to her argument, the trial court did not permit Neal to live in the marital residence permanently. Instead, it ordered the parties to allow the property to go into foreclosure. Accordingly, Ellen's fifth assignment of error is overruled.

**{¶ 35}** Based on the reasoning set forth above, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Jon A. Doughty
Elizabeth J. Henley
Hon. Thomas J. Capper