[Cite as *Shaffer v. Wagaman*, 2013-Ohio-509.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK   COUNTY**

| | | |
|---|---|---|
| LYNDA G. SHAFFER | : | |
| | : | Appellate Case No.   2012-CA-53 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No.   11-JUV-432 |
| v. | : | |
| | : | |
| COLLIN M. WAGAMAN | : | (Criminal Appeal from Common |
| | : | Pleas Court, Juvenile Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2013.

. . . . . . . . . . .

CAROL J. HOLM, Atty. Reg. #0014613, 130 West Second Street, Suite 1010, Dayton, Ohio
45402-1588
     Attorney for Plaintiff-Appellant

ADRIENNE D. BROOKS, Atty. Reg. #0078152, 36 North Detroit Street, Suite 102, Xenia,
Ohio 45385
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Lynda Shaffer (Mother) appeals a juvenile court's decision to grant Collin

Wagaman (Father) sole custody of their son. The court did not abuse its discretion, so we

affirm.

## I. Background

**{¶ 2}** Mother and Father were never married to each other. They have one child together, "Jimmy,"[1] born in June 2011. Mother also has a son, born in May 2010, from another relationship. Four months after Jimmy was born, Father filed a complaint with the juvenile court for shared parenting. Mother answered with a counterclaim for custody. In January 2012, Father withdrew his shared-parenting request and moved for sole custody. The juvenile court appointed a guardian ad litem (GAL) to represent Jimmy's interests. The court held a hearing at which several people testified–Father, Kimberly Wagaman (Father's mother), Cameron Wagaman (Father's brother), Mother, Kathy Jones-Hartshorn (Mother's mother), and the GAL.

**{¶ 3}** In June 2012, the court sustained Father's motion for sole custody and designated him Jimmy's residential parent and legal custodian. In its written decision, the court said that it had "concerns, in the long run, about [Mother]'s current living environment." (June 29, 2012 ENTRY, at 8). The court found that Mother and her two children lived with her mother, her stepfather, and her 27-year-old brother. The house has three bedrooms and two bathrooms. The court found that "it is not adequate, in terms of space, to meet [Jimmy]'s needs on anything more than a short-term basis." (*Id.*). Mother's brother sleeps on a cot in the living room, said the court, and Mother's other son sleeps in a crib in an office.

**{¶ 4}** The court also expressed concern about Mother's judgment. Its concern stems from Mother's admission that before and during both of her pregnancies she smoked marijuana. (At birth, Jimmy tested positive for marijuana.) Mother said that she did not

---

[1] We will use this pseudonym to refer to the child.

believe that smoking pot would harm the children. The court found that Mother was not currently smoking marijuana or using any other drugs. But it found that she has drug problems in her past–in 1989 she spent time in a reformatory for a drug conviction. The court's concern was "not only about [Mother]'s past drug usage while she was pregnant with both children but also her poor judgment at that time which disregarded the health and safety of both of her children immediately prior to and at the time of [their] birth." (*Id.* at 7). The court was not confident that in the future Mother would make good decisions: "While now, approximately one year later, [Mother] acknowledges her mistake, this Court is not convinced that her ability to make responsible and healthy decisions for [Jimmy] has entirely changed, as she has alleged." (*Id.*).

{¶ 5}    The juvenile court concluded that, "at this point [in] time," it was in Jimmy's best interest that Father be his residential parent and legal custodian. Mother appealed

## II. Review of the Custody Decision

{¶ 6}    A court's custody decision is reviewed under the abuse-of-discretion standard. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). Under this standard, "[t]he trial court should not be overruled absent a showing that the court acted in an unreasonable, arbitrary, or unconscionable manner." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 56, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983) (defining "abuse of discretion").

{¶ 7}    "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d

71, 74, 523 N.E.2d 846 (1988). Because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record," a reviewing court presumes that the trial court's findings are correct. (Citation omitted.) *Id.*

{¶ 8} Mother assigns five errors to the juvenile court. In them, she argues that the court's custody decision is an abuse of discretion because the court failed to consider all of the relevant non-statutory factors, put too much emphasis on her past drug use, failed to consider how much its decision will disrupt Jimmy's life, improperly based its decision on the relative economic status of the parties, and disregarded the GAL's report and testimony.

## A. Relevant non-statutory factors

{¶ 9} Although a court's discretion in custody matters is broad, the court must be guided by R.C. 3109.04. *Miller* at 74. Division (B)(1) of this section provides that, in making a custody decision, a court must consider what would be in the child's best interest. To determine the best interest, division (F)(1) provides that the court must consider "all relevant factors." The first assignment of error argues that the juvenile court abused its discretion by failing to consider all of the relevant non-statutory factors. Mother acknowledges that the court considered the appropriate enumerated factors, but she says that it did not consider four non-enumerated factors that are relevant. Mother also contends that because it did not consider these factors the court's decision is against the weight of the evidence.

{¶ 10} One factor asserted by Mother is that since Jimmy's birth she has been his primary caregiver. A second factor is that Jimmy was of "tender years," having turned one year old just after the hearing. Mother says that he required the care that she was giving him.

The discredited tender-years doctrine presumes that the mother is entitled to custody of a child of tender years (absent proof that the mother is unfit to be the child's custodian). *Martin v. Martin*, 2d Dist. Montgomery No. 14312, 1994 WL 247194, *3 (June 8, 1994). We have rejected "the idea that the mother should be given preference in a custody determination merely because of the tender years of the child." *In re Maxwell*, 8 Ohio App.3d 302, 304, 456 N.E.2d 1218 (2d Dist.1982). But we said that "who provide[s] the 'primary care' for the child prior to the custody award is however a very relevant factor." *Id*.; *Davis v. Davis*, 2d Dist. Clark No. 2011-CA-71, 2012-Ohio-418, ¶ 8 ("'The primary caregiver of a child is an important factor to be considered in the initial allocation of parental rights.'"), quoting *Chelman v. Chelman*, 2d Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, ¶ 43. "Where * * * both parents have served as primary caregiver at different times, a trial court has discretion to designate the father as legal custodian and residential parent if other evidence preponderates in his favor regarding the best interest of the children." (Citation omitted.) *Davis* at ¶ 8.

{¶ 11} The juvenile court's decision here does not expressly refer to the primary-caregiver factor. But the decision indicates that Jimmy has lived with Mother since birth and that Father regularly had him for visits. And the court found that "each of the parties have served as the primary caregiver to [the child] during the time he spends with them." (June 29, 2012 ENTRY, at 8). We cannot say that the court abused its discretion by designating Father the residential parent and legal custodian. Both parties had served as Jimmy's primary caregiver. And the court reasonably found that other evidence supports finding that it is in Jimmy's best interest right now to be with Father.

{¶ 12} A third factor that Mother argues the court failed to consider is the uneven

positions of power that, Mother asserts, exist between her and Father. Mother says that she has continually struggled with Father's assertions of power, for example, his bragging about and flaunting of other women, the importance that he puts on his unpredictable work schedule, the arguments he starts, and his disrespectful criticisms of her. We do not understand how this factor is relevant to the custody decision.

{¶ 13} The fourth factor concerns Father's mental orientation. Mother says that he is insensitive, manipulative, and untruthful. She asserts that the juvenile court did not put enough weight on Father's maintaining several relationships with other women while she was pregnant. Mother says that this shows his lack of good judgment and maturity. She also points to his mother's testimony that, Mother suggests, shows Father's personality problems and immaturity. The court expressly found that Father had no significant mental health issues. Father, said the court, has more easily moved on in life, though he has had little regard for how his actions have affected Mother. During Mother's pregnancy, Father had a relationship with at least one and possibly up to three other women, and he is now engaged to one of them. Father's behavior, though perhaps not exemplary, does not directly concern Jimmy. We cannot say that the court was unreasonable not to accord these facts more weight.

{¶ 14} Finally, Mother contends that, because the juvenile court failed to consider these four factors, its judgment is against the manifest weight of the evidence. We have previously held:

> Whether a decision is contrary to the manifest weight of the evidence is a question of law. Under the civil manifest-weight standard, "[i]f competent, credible evidence exists to support the trial court's decision, it must be

affirmed." *Gevedon v. Ivey*, 172 Ohio App.3d 567, 876 N.E.2d 604, 2007-Ohio-2970, at ¶ 60. In a civil manifest-weight analysis, "the court reviews the trial court's rationale and the evidence the trial court has cited in support of its decision." *Id.*

*Wise v. Wise*, 2d Dist. Montgomery No. 23424, 2010-Ohio-1116, ¶ 9. Given our review of the asserted factors and after reviewing the evidence, we conclude there is competent and credible evidence to support the court's decision and its rationale for reaching that decision.

{¶ 15}   The first assignment of error is overruled.

### B. Mother's marijuana use

{¶ 16}   The second assignment of error alleges that the juvenile court accorded too much weight to Mother's past occasional use of marijuana. Mother contends that her past use of marijuana is not a reason to withhold custody.

{¶ 17}   We have said that "the recreational use of marijuana, outside the presence of the child, without more, does not establish detriment." *Cantrell v. Trinkle*, 197 Ohio App.3d 82, 2011-Ohio-5288, 966 N.E.2d 288, ¶ 47 (2d. Dist.), citing *Gillum v. Gillum*, 2d Dist. Montgomery No. 24401, 2011-Ohio-2558. This rule does not apply here because Mother used marijuana *while she was pregnant* with each of her children. We note too that the court's concern was not with Mother's marijuana use per se. Rather, its concern stemmed from the fact that she used it while she was pregnant.

{¶ 18}   Mother also points out that Father and his brother, who watches Jimmy sometimes, each testified that he used marijuana in the past. And the brother testified that his girlfriend smoked marijuana recently. No evidence suggests that any of these people has ever

used marijuana in Jimmy's presence, though, or that their use of it ever endangered Jimmy. Therefore, consistent with *Cantrell* and *Gillum*, the juvenile court did not have to accord this evidence much weight.

{¶ 19} The second assignment of error is overruled.

### C. The disruption to Jimmy's life

{¶ 20} The third assignment of error alleges that the juvenile court failed to consider that Jimmy's life would be disrupted by granting Father custody. Mother says that granting him custody will disrupt Jimmy's life by taking him away from his mother and his brother. She cites the GAL's report, which notes that, if Father has custody, Jimmy would lose much of his contact with his brother. Disrupting the child's relationship with his brother is not in the child's best interest, says Mother, nor is interrupting the nurturing that he receives from Mother in his best interest.

{¶ 21} The court agreed with the GAL that Mother's and Father's time with Jimmy should be as equal as possible. This suggests that it did consider that, as a result of its decision, Jimmy would no longer have much contact with Mother and brother.

{¶ 22} The third assignment of error is overruled.[2]

---

[2] Mother also argues that the court ignored the issue raised in this assignment of error despite the fact that it cited the factors in R.C. 3109.051(D), which include "[t]he prior interaction and interrelationships of the child with the child's parents [and] siblings * * *," R.C. 3109.051(D)(1), and "[t]he amount of time that will be available for the child to spend with siblings," R.C. 3109.051(D)(8). The factors in R.C. 3109.051(D) are used in making parenting time and visitation determinations. And the court here cited these factors in support of its determination that it was in Jimmy's best interest to allow Mother parenting time. (In its written decision, the court referred to division (B) not (D). This is plainly a typo.)

**D. The relative economic status of the parties**

{¶ 23}   The fourth assignment of error alleges that the juvenile court improperly based its custody decision on economic factors. Mother contends that a court may not award custody based on one parent's having a better living environment or economic situation than the other parent.

{¶ 24}   The court found that Father lives with his fiancee in a three-bedroom, two-and-a-half bath house that is "clean and spacious and more than adequate to meet all of [Jimmy]'s needs." (June 29, 2012, ENTRY, at 5). The court further found that Father is a registered emergency-room nurse at Dayton Children's Hospital. Father's fiancee also works at the hospital, as an MRI technician. Father, said the court, is "substantially current" with his child-support obligation. The court found that Mother was not employed. She has an associate's degree in visual arts, said the court, and she indicated that she intends to go back to college in the future, though she was then not enrolled. The court found that Mother's only income was the $400 that she periodically receives in child support from Jimmy's brother's father.

{¶ 25}   Mother asserts that the house in which she was living had three bedrooms and two bathrooms, just like Father's house, yet the trial court found that the house was inadequate to meet Jimmy's needs. But the living conditions would not be the same: six people would be living in Mother's house; only three would be living in Father's house. With respect to the fact that she is unemployed, Mother says that the court ignored the fact that Jimmy's brother was born in May 2010 and that Jimmy was born just over a year later in June 2011. This, she says, gave her little time to work. Moreover, says Mother, the expense of child care would exceed any amount that she could earn.

{¶ 26}   We agree that a court cannot grant a parent custody just because that parent is richer. The pertinent question is whether either parent's living environment or economic situation would hurt the child. *See Cantrell*, 197 Ohio App.3d 82, 2011-Ohio-5288, 966 N.E.2d 288, at ¶ 40, 42-43. Here the juvenile court found that Mother's living environment would hurt Jimmy in the long run. It did not say whether the fact that Mother was unemployed weighed against her. We cannot say that the court granted Father custody just because he is economically better off.

{¶ 27}   The fourth assignment of error is overruled.

### E. The GAL's report and testimony

{¶ 28}   The fifth assignment of error alleges that the juvenile court failed to accord the appropriate weight to the GAL's report and testimony. Mother contends that because the court found that the factors generally weighed evenly between the parents it should have followed the GAL's recommendation to grant Mother custody.

{¶ 29}   Just before the custody hearing, the GAL had filed a written report with the court. The report concludes: "Neither of these parents is a bad parent; both parents love the child; neither is the best parent. This child will do well with either parent, but the Guardian ad litem believes that the child will do best if the Court follows his recommendation." (REPORT OF THE GUARDIAN AD LITEM, at 5). The report provides only slight support for its custody recommendation. The only real problem, identified by the report, with giving custody to Father is that Jimmy will lose much of his contact with his brother, which the report says would result in a loss of companionship that would not be in Jimmy's best interest.

{¶ 30}   The juvenile court rejected the GAL's custody recommendation. The court acknowledged that the GAL recommended that Mother be given custody, that Father be

granted more than the standard visitation time, and that they share time with Jimmy on a more equal basis. Although the court agreed that parenting time should be as equal as possible, it did not agree that giving Mother custody right now would be in Jimmy's best interest, noting that the GAL's recommendations were made without the benefit of the hearing testimony. We note too that the court did not find that the factors weighed evenly between the parties—Mother's housing was inadequate and her judgment questionable.

**{¶ 31}** "A trial court is not bound to follow a guardian ad litem's recommendation." *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP–556, 2009–Ohio–6992, ¶ 46. We cannot say that the juvenile court's decision here not to do so was unreasonable.

**{¶ 32}** The fifth assignment of error is overruled.

**{¶ 33}** The juvenile court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.

Copies mailed to:

Carol J. Holm
Adrienne D. Brooks
Hon. Thomas J. Capper