IN RE MAXWELL.

(No. 1060—Decided October 8, 1982.)

*Messrs. Huffman, Landis & Weaks* and *Mr. Robert J. Huffman,* for appellee Peggy Ellen Maxwell.

*Messrs. Spidel, Staley, Hole & Hanes* and *Mr. William H. Cooper,* for appellant Guy Craig Maxwell.

BROGAN, J., This case comes before this court pursuant to an appeal from a judgment of the Court of Common Pleas of Darke County awarding custody of the minor child of the parties, Darren Craig Maxwell, to the plaintiff-appellee, Peggy Ellen Maxwell.

The parties, Peggy and Guy Craig Maxwell, were married on March 22, 1975, and one child was born of this marriage, Darren, whose date of birth is May 21, 1979.

On January 23, 1981, the appellee filed her complaint for divorce asking for both temporary and permanent custody of the minor child. On January 30, 1981, the appellant filed his answer and counterclaim contesting all issues including the granting of custody to the appellee. The trial began on April 22, 1981, at which time the parties submitted an oral property settlement to the court, which was approved by the court. The appellant then withdrew his answer and counterclaim and permitted the appellee to proceed with her evidence as to her grounds for divorce. The parties then submitted evidence to the court solely on the issues of child custody and support.

On March 1, 1982, the court rendered its decision which was reduced to judgment on March 11, 1982. It was from that decision and judgment granting the appellee custody of the minor child, Darren Craig Maxwell, that the appellant filed his notice of appeal. Appellant has assigned one assignment of error.

"The decision of the trial court rendered on March 1, 1982, and reduced to judgment on March 11, 1982, is erroneous in that the common pleas court committed prejudicial error by failing to comply with the requirement set forth in Revised Code Section 3109.04(A) and (C) in making its award of custody, and by doing so acted contrary to the overwhelming weight of the evidence."

R.C. 3109.04(A) states the trial court may grant the care, custody, and control of the children to either parent, and the court shall take into account that which would be in the best interests of the child. In determining the "best interest of a child," whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including: (1) the wishes of the child's parents regarding custody; (2) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests; (3) the child's adjustment to his home, school, and community; and (4) the mental and physical health of all persons involved in the situation. R.C. 3109.04(C).

The trial court, in granting permanent custody to the mother, made the following observations in its decision of March 1, 1982:

"(1)  all of the evidence adduced sup-

ported a finding that both of the parties are well qualified to be custodial parents of the minor child. * * *

"(2) the court finds the mother had until the separation of the parties provided the primary care for the child. The court further found that due to secondary employment and/or other projects the father spent only a minimal amount of the child's waking hours with the child prior to the separation.

"(3) the court finds that the father is now spending more time in a meaningful relationship with his minor son through exercise of his visitation rights than he did when the family lived together as a unit.

"(4) the court noted that the two clinical psychologists who testified for the defendant father indicated both parties were well qualified as parents. One testified the father was more qualified as a parent as he was more mature. The court noted the evidence corroborated that the father was older and more sophisticated in the business world while the evidence did not bear out that he was more mature in his handling of his emotions or stress. The other psychologist testified the father was more qualified because of a deeper commitment, but the court noted the father's actions in separating himself from his family prior to the separation belies such commitment."

We have thoroughly reviewed the record below and find no reason to suggest the trial court abused its discretion in awarding custody to the appellee-mother. The record discloses that both parties loved their child very much and would be suitable in carrying out parental responsibilities. Dr. Antoinette Cordell testified she found no personality problems present in the appellee-mother and that she related quite well to her child. Indeed she observed that Peggy Maxwell was a very adequate mother. She further testified that she found no serious psychiatric problems with the husband although he sometimes was impulsive. She also felt

that Guy Maxwell related very well with his child. She concluded by saying that both of the parents could provide for the child capably and she did not have any major criticism of either one. She recommended the father be granted custody in that he had a somewhat stronger and more committed approach than the mother, which was not to say the mother was inadequate, but that the husband had somewhat more to offer in the long run.

Dr. Marilyn Shea who examined the parties essentially corroborated the findings of Dr. Cordell. She admitted having conferred with Dr. Cordell prior to testifying. She stated both parties were good parents, and both had acceptable concepts of disciplining their child. Dr. Shea conceded that Peggy's strengths were that she had had custody and, therefore, more time with the child. However, she felt Guy was more mature and responsible. She felt Guy was less compulsive and more emotionally open.

Neither psychologist placed much significance on the husband's jumping through a plate glass window to avoid service of the divorce complaint or his abusive conduct toward his wife during sexual activity. It is small wonder the trial court was critical of the conclusion that the husband was more mature and better able to handle stress situations.

Dr. Cordell seems to suggest that appellee lacked commitment because she wished to end her marriage to her husband. There is, however, no evidence to suggest that she was not wholly committed to the welfare of her child. Both parties conceded that each was a good parent to their child, and neither disparaged the other to the small child (a refreshing circumstance in a contested custody case).

In short, the testimony depicts two parents who could equally fulfill the responsibilities of primary custody. The trial court concluded that the mother's close exposure to the child since birth and her attention to the needs of the child in the first two years of his life gave her the

edge. This discretionary judgment is wholly consistent with the evidence and the mandates of R.C. 3109.04(C).

This court has previously rejected the idea that the mother should be given preference in a custody determination merely because of the tender years of the child. We stated that nothing in the statute setting forth factors the trial court must consider in determining the child's best interests for a custody award in any way "indicates that the sex of the proposed custodian is a relevant factor." *Edmonds* v. *Edmonds* (March 16, 1981), Montgomery App. No. 6895, unreported. Since the evidence in this case established that either parent would be a proper custodian, the reviewing court may not substitute its judgment for that of the trial court. *Id.*

The importance of who provided the "primary care" for the child prior to the custody award is however a very relevant factor. In *Van Dyke* v. *Van Dyke* (1980), 48 Ore. App. 965, 618 P. 2d 465, the Oregon Court of Appeals held that in a dissolution proceeding, evidence that prior to the parties' separation the mother was the primary caretaker of the couple's son was sufficient to warrant an award of custody to the mother subject to reasonable and liberal visitation rights in the father. The court held that while the statute governing custody awards prohibits the trial court from giving preference to the mother solely because she is the mother, it does not prevent the trial court from considering the fact that the mother was the primary caretaker, and is a relevant consideration in a custody decision. The court in *Van Dyke* observed at page 970 of its decision:

"The evidence in this case was that, prior to the parties' separation, the mother was the primary caretaker of the couple's son. Except for temporary periods of work of approximately three months time, she stayed at home and performed the traditional homemaker role. She cleaned the house, made the meals and cared for the parties' son. The father played the role of breadwinner, working regularly each day. This is not to say that he did not also attend to and spend time with the child, but only that the majority of the child-care duties fell on the mother's shoulder. In a similar case, we stated:

" 'The undisputed evidence in this case was that the wife was not merely the mother but was also the primary parent. During the marriage she was not working and performed the traditional and honorable role of homemaker. She cleaned the house, cared for the children, fed the family, nursed them when sick and spent those countless hours disciplining, counseling and chatting with the children that every homemaker should. For some families the husband may perform this role and be the primary parent. In other families the parents evenly divide the role and there is no primary parent. In this family the husband played the traditional role of breadwinner, working eight to ten hours a day. In his off-hours he dedicated much time and attention to the children, but the lion's share of the child raising was performed by the wife. It is undisputed that the children were happy and well-adjusted and that the relationship between the wife and children was close, loving and successful. Although the same relationship unquestionably existed to a degree with the husband, the close and successful emotional relationship between the primary parent and the children coupled with the age of the children dictate the continuance of that relationship.' *Derby and Derby, supra,* 31 [Ore.] App. [803,] at 806-807 [571 P. 2d 562]."

In a recent decision, Justice Neely of the West Virginia Supreme Court held that with reference to very young children, the law *presumes* that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit. *Garska* v. *McCoy* (W. Va. 1981), 278 S.E. 2d 357.

The following is an excerpt from this eloquently written opinion:

"It is now time to address explicitly the effect which the strong presumption in favor of the primary caretaker parent articulated in *J.B.* v. *A.B.* [(1978), 242 S.E.2d 248], *supra* has upon the equity of divorce and child custody dispositions. In this regard we must be concerned not only with those disputes which are decided by trial judges in court but also with all those cases which are settled outside of court in reliance on the rules we generate.

"The loss of children is a terrifying specter to concerned and loving parents; however, it is particularly terrifying to the primary caretaker parent who, by virtue of the caretaking function, was closest to the child before the divorce or other proceedings were initiated. While the primary caretaker parent in most cases in West Virginia is still the mother, nonetheless, now that sex roles are becoming more flexible and high-income jobs are opening to women, it is conceivable that the primary caretaker parent may also be the father. If the primary caretaker parent is, indeed, the father, then under *W. Va. Code,* 48-2-15 [1980] he will be entitled to the alimony and support payments exactly as a woman would be in similar circumstances. *Peters* v. *Narick,* W. Va., 270 S.E. 2d 760 (1980).

"Since the parent who is not the primary caretaker is usually in the superior financial position, the subsequent welfare of the child depends to a substantial degree upon the level of support payments which are awarded in the course of a divorce. Our experience instructs us that uncertainty about the outcome of custody disputes leads to the irresistible temptation to trade the custody of the child in return for lower alimony and child support payments. Since trial court judges generally approve consensual agreements on child support, underlying economic data which bear upon the equity of settlements are seldom investigated at the time an order is entered. While *Code,* 48-2-15 [1980] speaks in terms of 'the best interest of the children' in every case, the one enormously important function of legal rules is to inspire rational and equitable settlements in cases which never reach adversary status in court." *Id.* at 360-361. (Footnote omitted.)

"While it is difficult to enumerate all of the factors which will contribute to a conclusion that one or the other parent was the primary caretaker parent, nonetheless, there are certain obvious criteria to which a court must initially look. In establishing which natural or adoptive parent is the primary caretaker, the trial court shall determine which parent has taken primary responsibility for, *inter alia,* the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

"In those custody disputes where the facts demonstrate that child care and custody were shared in an entirely equal way, then indeed no presumption arises and the court must proceed to inquire further into relative degrees of parental competence. However, where one parent can demonstrate with regard to a child of tender years that he or she is clearly the primary caretaker parent, then the court must further determine only whether the primary caretaker parent is a fit parent. Where the primary caretaker parent achieves the minimum, objective standard of behavior which qualifies him or her as a fit parent, the trial court must award the

306

child to the primary caretaker parent." *Id.* at 363. (Footnote omitted.)

R.C. 3109.04(C) would preclude our placing a presumptive quality on the factor of who is the primary caretaker. However, it is a factor which must be given strong consideration as it bears on the child's interaction and interrelationship with his parents, as well as the child's adjustment to his home. R.C. 3109.04 (C)(3) and (4). We also do not believe that R.C. 3109.04(C)(1) through (5) are all inclusive, as the court shall consider all relevant factors, and primary caretaking is indeed relevant. Not to do so ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs.

The Ohio Supreme Court in *Trickey* v. *Trickey* (1952), 158 Ohio St. 9 [47 O.O. 481] held:

"This court has repeatedly held that in an appeal on questions of law the Court of Appeals can not substitute its judgment for the judgment of the trial court * * *." *Id.* at 14.

"In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record. * * *" *Id.* at 13.

We find no abuse of discretion in the trial court's award of custody to the appellee. The assignment of error is thus overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WEBER, JJ., concur.