**Biller v. Biller**
*[Cite as 2 AOA 682]*

*Case No. CA89-05-036*
*Clermont County, (12th)*
*Decided March 12, 1990*

*R.C. 3109.04*

*Peter Ulbrich, 562 Old State Route 74, Cincinnati, Ohio 45244, for plaintiff-appellant.*

*Chris Erhardt, 60 N. Market Street, Batavia, Ohio 45103, for defendant-appellee.*

JONES, P.J.

Plaintiff-appellant, Neil Biller, appeals a divorce decree from the Clermont County Court of Common Pleas, Domestic Relations Division. The issue here is whether the common pleas court's child custody award was against the weight of the evidence and a proper exercise of judicial power.

Appellant and defendant-appellee, Lori Biller, were married on July 15, 1981. Three children were born issue of the marriage. Appellant filed a complaint for divorce after discovering that appellee had become pregnant by another man. The court conducted hearings on all contested issues on January 9 and 10, 1989.

On February 8, 1989, the trial court rendered a decision in which it found that the children's best interest would be served by a custody award to appellee. The custody award was incorporated into the court's April 12, 1989 final decree of divorce. Appellant appeals, submitting the following assignments of error for review:

*First Assignment of Error*

"The decision of the trial court to grant custody to the appellee was contrary to the manifest weight of the evidence and contrary to law."

*Second Assignment of Error*

"The decision of the trial court granting custody to appellee was arbitrary and constituted and [*sic*] abuse of discretion."

Under his first assignment of error, appellant challenges the court's application of, and findings with respect to, the primary caretaker doctrine. The court found that appellee was the children's primary caretaker. Upon considering all other relevant factors, the court concluded that a custody award to the primary caretaker, *i.e.*, appellee, would be in the best interest of the children. Appellant argues that the court's finding that appellee was the primary caretaker was against the weight of the evidence.

Several parental duties have been identified as relevant criteria for determining which parent, by the performance of such duties, has assumed primary responsibility for a child's care. *In re Maxwell* (1982), 8 Ohio App. 3d 302. These duties include:

"1) The preparation and planning of meals;

"2) Bathing, grooming and dressing;

"3) The purchase, cleaning, and care of clothing;

"4) Medical care, including nursing and trips to physicians

"5) The arrangement for social interaction among peers;

"6) The arrangement of alternative care including babysitting and day care;

"7) Putting the child to bet at night, attending to the child in the middle of the night, and waking the child in the mornings;

"8) The child's discipline, including general manners and toilet training;

"9) Education, including religious, cultural and social education; and,

"10) Teaching elementary school skills, including reading, writing and arithmetic.

*Maxwell, supras*, at 305. See, also, *Edwards* v. *Edwards* (May 19, 1988), Cuyahoga App. No. 53928, unreported.

The evidence reveals that the parties worked staggered shifts so that each could watch the children while the other worked. Appellant's claim that he helped care for the children is indeed valid. However, the primary caretaker role implies more than meeting the everyday needs of a child. *Maxwell, supra.* Several witnesses, including the court-appointed psychologist, all identified appellee as the children's primary caretaker. Although appellant did assist in the care of the children, the record reflects that appellee was, and has continued to be, the children's primary caretaker.

Appellant also contends that the application of the primary caretaker doctrine automatically places appellant -- as the working parent -- at a disadvantage by eliminating the equality between parents in custody matters created by R.C. 3109.03.

In a divorce proceeding, a husband and wife "*** stand upon an equality as to the care, custody, and control of [their] offspring, so far as parenthood is involved." R.C. 3109.03. Thus, a

custody proceeding begins with the assumption that both parents are equally capable to be the custodial parent. A trial court, in choosing between two parents who both desire custody, is to base its award upon the child's best interest. *Birch* v. *Birch* (1984), 11 Ohio St. 3d 85. In determining the child's best interest, the court shall consider all relevant factors including those enumerated in R.C. 3109.04(C). One such factor to be considered is the child's interaction and interrelationship with his parents. R.C. 3109.04(C) (3). Although not specifically mentioned in R.C. 3109.04(C), the role of the child's primary caretaker is a factor to be considered in analyzing the child's relationship and interaction with his parents. *Thompson* v. *Thompson* (1987), 31 Ohio App. 3d 254; *Maxwell, supra.*

Appellant submits that by utilizing the primary caretaker role as a determinative factor in a custody award, the trial court reinstates the tender years doctrine and predicates its award on a custodial preference for the mother contrary to the express provisions of R.C. 3109.03. The tender years doctrine recognized a mother's preferred privilege to nurture and care for children based upon a common law perception that the best interest of a child of tender years was ordinarily served by a custody award to the mother. See, *e.g., Speckman* v. *Speckman* (App. 1954), 70 Ohio Law Abs. 506, and *Elford* v. *Elford* (App. 1942), 36 Ohio Law Abs. 397. One court has held that a custody determination based *solely upon the tender years doctrine* violates the best interest standard of R.C. 3109.04 and constitutes reversible error. See *Charles* v. *Charles* (1985), 23 Ohio App. 3d 109. In *Berry* v. *Berry* (Mar. 12, 1990), at 15-19, we held that a child's tender years, like the parent's primary caretaker role, is a relevant factor which merits consideration in a custody award.

We stated that the consideration of these factors does not raise a presumption of parental preference on behalf of one parent or the other. Rather, a child's tender years and a parent's role as the primary caretaker are relevant factors which merit consideration in determining what is in a child's interest. *Id.* If all other factors still reflect relative equality between the parents for purposes of a custodial determination, then a child's age and the role of the primary caretaker are relevant for determining what form of custody would serve the child's best interest. We do not agree, however, that consideration of these factors necessarily resurrects a custodial presumption in favor of the mother.

Finally, appellant asserts that the party, in this case appellee, relying upon the primary caretaker doctrine bears the burden of demonstrating that removal from the primary caretaker would work some harm upon the children and not serve their best interest. In an original custody award, the court is to award custody based upon the child's best interest "[u]pon hearing the testimony of either or both parents ***." R.C. 3109.04(A). The statute does not establish a burden of proof for either parent. Instead, each parent may provide evidence bearing upon the relevant factors the court must consider in determining the child's best interest. Naturally, there must be sufficient evidence to support a trial court's finding on the issue of primary caretaker where such is relevant to the particular case under consideration. A primary caretaker parent is not required, however, to prove that a custody award to the other parent would be against a child's best interest.

For the foregoing reasons, we find that the trial court's findings regarding appellee's role as the primary caretaker were not against the weight of the evidence. The first assignment of error is therefore overruled.

In his second assignment of error, appellant argues that the trial court's custody award, based upon the evidence below, was unreasonable, arbitrary and unconscionable, and constituted an abuse of discretion.

Appellant focuses upon evidence of appellee's conduct, especially her pregnancy resulting from an adulterous affair. Given such conduct, appellant asserts, it was an abuse of discretion for the trial court to award custody to appellee.

It has been held that a court's inquiry into the moral conducts or standards of a parent is limited to a determination of the effect of such conduct on a child. See *In re Rex* (1981), 3 Ohio App. 3d 198; *Stone* v. *Stone* (1983), 9 Ohio App. 3d 6. Although these cases involve situations where a noncustodial parent sought a change of custody under R.C. 3109.04(B) because of the alleged immoral conduct of the custodial parent, we feel that the general principle regarding the effect of a parent's conduct upon the child is equally applicable to an original custody determination. In other words, there must be some demonstration that the questionable conduct would have an adverse effect upon the children, *i.e.*, would be detrimental to the children's best interest. In the case at bar, there

is no evidence that the children were adversely affected by appellee's conduct. Should such similar future conduct by appellee have a detrimental effect upon the children, such changed circumstances could arguably support a change of custody to the noncustodial parent pursuant to R.C. 3109.04(B). Inasmuch as there is no evidence that appellee's conduct had such an effect upon the children, we cannot say that the trial court's custody award constituted an abuse of discretion.

The second assignment of error is hereby overruled.

*Judgment affirmed.*

HENDRICKSON, J., Concurs in judgment only.
YOUNG, J., Concurs separately.

YOUNG, J., concurring separately:

I made my position regarding the "tender years" doctrine abundantly clear in my dissent in *Berry* v. *Berry* (Mar. 12, 1990), Clermont App. No. CA88-11-081, unreported.

I am still of the opinion that that doctrine has no place in a court's consideration of custody matters.

I find that the trial court's decision regarding custody was proper and therefore, I concur.