[Cite as *In re O.M.*, 2018-Ohio-2114.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

IN THE MATTER OF:

O.M.

:
:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2017-CA-30

Trial Court Case No. 17-JG-12

(Appeal from Champaign County Court
of Common Pleas, Domestic
Relations-Juvenile-Probate Division)

. . . . . . . . . .

O P I N I O N

Rendered on the 1st day of June, 2018.

. . . . . . . . . .

JENNIFER S. DELAPLANE, Atty. Reg. No. 0089521, 127 W. Market Street, Troy, Ohio
45373
        Attorney for Defendant-Appellee

RONALD C. TOMPKINS, Atty. Reg. No. 0030007, 121 S. Main Street, Urbana, Ohio
43078
        Attorney for Plaintiff-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Plaintiff-appellant A.M. ("Father") appeals from that part of a shared parenting judgment that designated the child's mother, M.S. ("Mother"), the residential parent and gave Father parenting time every other weekend. Father argues that the trial court erred by designating Mother, and not him, the residential parent. We conclude that his argument has no merit. Consequently, we affirm the trial court's judgment.

## I. Background

{¶ 2} Oscar[1] was born in March 2014 to Mother and Father who were unmarried. Soon after, Father's paternity was established, and he was ordered to pay Mother child support. The parties agreed that Oscar would live with Mother and that Father would have him every other weekend.

{¶ 3} One night in early April 2017, at Mother's house, Mother's live-in boyfriend, C.H., spanked three-year old Oscar so hard that bruises could be seen on the child's buttocks. Mother slept through the incident and learned of it the next morning. She mentioned the incident to the child's babysitter, who photographed the bruises out of fear that she might be reported for abuse. About a week and a half later, at a birthday party to which Father had taken Oscar, the babysitter told Father about the incident and showed him the picture that she had taken of the bruises. She told him that Mother had told her that C.H. had gotten a little out of hand in disciplining the child. Father reported the incident to the police the next day. C.H. was charged with domestic violence and later convicted.

{¶ 4} The same day that he reported the incident to the police, Father filed an ex

---

[1] We use this pseudonym to refer to the minor child, O.M.

parte motion for custody of Oscar. The trial court denied the motion and set the matter for a hearing. The court also appointed a guardian ad litem (GAL) for the child. In June, Father filed a motion asking the court to adopt a shared-parenting plan naming him the residential parent and giving Mother parenting time every other weekend. A few days later, Mother too filed a motion asking the court to adopt a shared-parenting plan, but her proposed plan named herself the residential parent and gave Father parenting time every other weekend.

{¶ 5} A hearing was held in September at which testified the parties and several witnesses, including the police officer who investigated the domestic-violence incident and the GAL. The officer testified that when he called Mother to ask about the injury to the child, he believed that she initially tried to mislead him by saying that the child fell. Mother testified that she was not trying to mislead but was simply confused about what the officer was asking. The GAL testified that she was concerned about Mother's ability and willingness to protect Oscar. She recommended that Father be named the residential parent and that Mother be given parenting time every other weekend.

{¶ 6} On September 28, 2017, the trial court entered a shared-parenting order that names Mother the residential parent and gives Father parenting time every other weekend, which has been the arrangement since the child was born. In its decision, the court said that while it found the domestic-violence incident "troubling," it did not believe that the incident "warrants the complete disruption of the child's current life by changing custody."

{¶ 7} Father appealed.

## II. Analysis

{¶ 8} Father assigns three errors to the trial court:

"A TRIAL COURT ABUSES ITS DISCRETION IN ADOPTING A SHARED PARENTING PLAN IN WHICH IT REDUCES THE FATHER'S COMPANIONSHIP TO STANDARD ORDER WHERE A MOTHER HAS TOLERATED A BOYFRIEND'S ABUSE OF THEIR CHILD."

"THE TRIAL COURT ERRED BY APPLYING A PRIMARY CAREGIVER PRESUMPTION IN FAVOR OF THE MOTHER IN A CASE GOVERNED BY 3109.042."

"A TRIAL COURT ABUSES ITS DISCRETION BY COMPLETELY IGNORING THE REPORT AND RECOMMENDATION OF THE GUARDIAN AD LITEM OR ABUSE OF A CHILD IN ADOPTING A SHARED PARENTING PLAN PURSUANT TO R.C. SECTION 3109.04(F)(2)."

{¶ 9} "The trial court may not approve a shared parenting plan 'unless it determines that the plan is in the best interest of the child[ ].' R.C. 3109.04(D)(1)(b). The trial court exercises its discretion when deciding whether a shared parenting plan is in the child's best interest. *Id.* Consequently, an appellate court will only reverse such a decision upon a showing of an abuse of discretion." (Citations omitted.) *Bond v. de Rinaldis*, 10th Dist. Franklin No. 15AP-646, 2016-Ohio-3342, ¶ 44. Here, Father does not object to the adoption of a shared-parenting plan per se but to the provision in the plan that makes Mother the residential parent.

{¶ 10} Father first argues that the trial court applied a primary-caregiver presumption in favor of Mother in violation of R.C. 3109.042(A), which states:

An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues

an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

Here, the shared-parenting order is the first allocation of parental rights and responsibilities. Although child support was awarded to Mother in 2014, it appears that the issue of custody was neither raised nor litigated then. At that time, the trial court simply recognized the presumption in R.C. 3109.042(A) that the child's mother was the custodial parent.

{¶ 11} Under R.C. 3109.042(A), "[w]hen custody has never been litigated, the parties stand on equal footing regarding allocation of parental rights and responsibilities." (Citations omitted.) *Brewer v. Brewer*, 2d Dist. Darke No. 2010 CA 17, 2011-Ohio-1275, ¶ 26. *See also In re S.W.-S.*, 2d Dist. Miami No. 2013 CA 17, 2013-Ohio-4823, ¶ 15 (holding that, under R.C. 3109.042(A), the father and mother are on equal footing when a court makes an initial custody determination for a child born to an unmarried mother). "The child's best interest is the sole issue, and it is evaluated using the non-exclusive list of factors set forth in R.C. 3109.04(F)(1)." *Id.* "Although a trial court is required to consider these factors, it retains broad discretion in making a best-interest determination. We review its determination for an abuse of that discretion." (Citations omitted.) *Davis v. Davis*, 2d Dist. Clark No. 2011-CA-71, 2012-Ohio-418, ¶ 11.

{¶ 12} The factors in R.C. 3109.04(F)(1) "relate primarily to the health and well-being of the child and the parents." *Meyer v. Anderson,* 2d Dist. Miami No. 01 CA53, 2002 WL 1251449, *2 (June 7, 2002). This includes "[t]he child's interaction and

interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest" and "[t]he child's adjustment to the child's home, school, and community." R.C. 3109.04(F)(1)(c) and (d). Who the child's primary caretaker is bears on both of these factors. *In re Maxwell*, 8 Ohio App.3d 302, 306, 456 N.E.2d 1218 (2d Dist.1982). Indeed, we have held that in determining the best interests of a child in an original custody decision, "the trial court, in addition to those factors set forth in R.C. 3109.04, should strongly consider which parent was the primary caretaker of the child." *Kelly v. Kelly*, 2d Dist. Miami No. 2001-CA-52, 2002 WL 360656, *7 (Mar. 8, 2002), citing *Maxwell. See also Chelman v. Chelman*, 2d Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, ¶ 43 (saying that "[t]he primary caregiver of a child is an important factor to be considered in the initial allocation of parental rights"); *Hutchinson v. Hutchinson*, 2d Dist. Montgomery No. 26221, 2014-Ohio-4604, ¶ 44 (quoting the same). We have explained that "a court that fails to consider the primary care giving of a parent ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs." *Kelly* at *7; *In re N.M.*, 2d Dist. Montgomery No. 24110, 2010-Ohio-5048, ¶ 23 (quoting the same). But while the primary caregiver should be given strong consideration, the factor has no "presumptive quality," *Maxwell* at 306. In other words, "a party's role as the primary caregiver is not given presumptive weight over other relevant factors." *Chelman* at ¶ 43.

{¶ 13} Here, there is little evidence that the trial court gave presumptive weight to the fact that Mother has been Oscar's primary caregiver. The court did mention this fact a couple of times in its decision, noting at one point that "[t]he mother has been the child's

primary caregiver providing for all his daily needs for all of his young life." But the court only gave this fact strong consideration, not presumptive weight. The court plainly did not want to disrupt the child's life: "She [Mother] has been the child's primary caregiver and he is doing well. He is healthy and happy. The Court does not believe this incident warrants the complete disruption of the child's current life by changing custody."

{¶ 14} Father argues that the trial court's decision shows that, rather than considering the parties on equal footing, the court placed a greater burden on him. But we are not convinced. We see no evidence that the trial court placed a higher burden on Father. Rather, the court properly weighed the potential detrimental effect of taking the child away from the person that he was used to caring for him.

{¶ 15} Father next argues that the trial court failed to consider the GAL's recommendation that he should be the residential parent and failed to consider the domestic-violence incident involving the child. But the court's decision shows that it considered both factors. R.C. 3109.04(F)(2)(e) requires a trial court to consider the recommendation of a GAL in its shared-parenting determination. The court here did this, noting that "[t]he Guardian ad litem recommends shared parenting with the father being the residential parent for school purposes and the mother having parenting time every other weekend." The court simply disagreed with the GAL's recommendation, which it was certainly entitled to do. As to the domestic-violence incident, the trial court called it "troubling" but rejected Father's contention that Mother is incapable of protecting the child. The court found that Mother did not commit the domestic violence or know until later that it had occurred. While the court acknowledged that she continued to have a relationship with the offender, C.H., after his conviction, the court also noted that Mother eventually

ended the relationship, choosing her child over C.H. The court also noted the testimony from the police officer who had investigated the incident that Mother initially had tried to protect C.H. by misleadingly telling the officer that the child had simply fallen. But the court discounted this evidence in light of Mother's testimony that she was not clear at first what incident the officer was asking her about.

{¶ 16} In short, the record reveals that the trial court considered each of the statutory best-interest factors and made findings about them. The court's weighing of the factors is reasonable. We cannot conclude that it abused its discretion in weighing the factors relevant to the best interest of the child as it did. Ultimately, the court did not believe that the incident of domestic violence "warrants the complete disruption of the child's current life by changing custody." The child is doing well, said the court, and is healthy and happy. And the court noted that Father "has had parenting time on an every other weekend basis which seems to have gone well."

{¶ 17} Based on our review of the record, we cannot say that the trial court abused its discretion by naming Mother the residential parent.

### III. Conclusion

{¶ 18} The assignments of error are overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P. J. and DONOVAN, J., concur.

Copies mailed to:

Jennifer S. Delaplane
Ronald C. Tompkins
Meghann Scott

Hon. Brett A. Gilbert