[Cite as *In re K.J.F.*, 2023-Ohio-3607.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

IN RE:

K.J.F.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 CO 0004

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Columbiana County, Ohio
Case No. C2010-0441-2-3

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Tracey A. Laslo*, 325 East Main Street, Alliance, Ohio 44601 for Appellant and

*No Brief filed* for Appellee.

Dated: September 28, 2023

**Robb, J.**

{¶1} Appellant, A.N. (Mother), appeals the December 20, 2022 judgment designating Appellee, K.F. (Father), the residential and custodial parent of the parties' child, K.J.F., and ordering her to pay child support. Mother contends the trial court erred by naming Father the residential parent. For the following reasons, we disagree and affirm.

## Statement of the Case

{¶2} Mother and Father never married. Mother has been the residential parent of the parties' only biological child, K.J.F., since his birth in January of 2010. He is currently thirteen years old. Mother also has a daughter, who was born in 2008. Father has a father-daughter relationship with her, and he has enjoyed parenting time with both of the children, even though the older child is not Father's biological child.

{¶3} Both of the parties have since married. Father has two more children with his current wife. The parties lived in neighboring school districts and have mostly handled their parenting issues without court involvement until Mother's husband accepted a job in Alabama in 2021.

{¶4} The trial court case was initiated in 2010 with administrative child support proceedings. Father was determined to be the biological father of K.J.F. and ordered to pay Mother child support. The Columbiana County Child Support Enforcement Agency moved the court to certify and adopt its administrative orders regarding parentage and support. (November 4, 2010 Petition to Certify.) The trial court adopted the orders of support and stated it was adopting and incorporating the agency's administrative orders. This judgment made Father the obligee and ordered him to pay child support. (March 7, 2011 Judgment.)

{¶5} Thereafter, several amended child support withholding orders were filed in the trial court, each maintaining Father as the obligor and referring to Mother as the obligee and custodial parent.

{¶6} In June of 2017, Father filed a complaint for companionship seeking parenting time. His complaint indicates Father has been exercising parenting time without a court order and he had the child every other weekend, Wednesday nights, and half of

the summer. (June 19, 2017 Complaint for Companionship.) An Agreed Judgment Entry was filed nine days later. It states the parties agree Father will have companionship per the standard parenting time as outlined in Local Rule 9.4 and will enjoy parenting time every other weekend during the school year and half of the summer. (June 28, 2017 Agreed Judgment Entry.)

{¶7} In the summer of 2021, Mother's husband accepted a job in Alabama. Mother testified she informed Father about her intent to relocate with the children in June of 2021, and they moved in October of 2021. In September of 2021, Mother filed a notice of intent to relocate. It states Mother and her two children were relocating to Alabama for her husband's new employment because of his significant increase in income. (September 15, 2021 Notice of Intent to Relocate.)

{¶8} In response, Father moved for a change of parental rights and asked the court to name him the residential and custodial parent of K.J.F. In the same motion, Father asked the court to reassess the parties' support obligations and rights to claim K.J.F. for tax purposes. (November 15, 2021 Motion for Change of Parental Rights.) Father also moved for a change of custody regarding Mother's daughter in a separate trial court case. The case regarding the daughter has a separate common pleas case number but was heard via the same trial court proceedings.

{¶9} A guardian ad litem (GAL) was appointed. She filed her report in July of 2022. She interviewed both children, both parties, and Father's wife. The GAL also reviewed the court's file and school records. She spoke with the children separately, and states in her report that each child expressed their wishes to her. The GAL does not, however, include the stated desires of the children in her report. (July 20, 2022 GAL Report.)

{¶10} The GAL indicates both parents have been honest and forthcoming and that both can appropriately meet the needs of the children. The GAL noted Mother's relocation and her husband's increase in pay allows her to be a stay-at-home mother to better meet the needs of the children. The GAL also reported Mother had acclimated the children to Alabama and had registered them for extracurricular activities and made friends in their neighborhood. The GAL found that Mother had always facilitated Father's visitation and there had been no court involvement regarding visitation. The GAL also noted she

believed Mother would continue to facilitate the long-distance parenting time and assist with transportation consistent with Mother's statements. (July 20, 2022 GAL Report.)

{¶11} Regarding Father, the GAL found he was a good parent with a safe home. She emphasized his dissatisfaction with their move and felt it negatively impacted the children and his family. He complained about visitation issues since they relocated but acknowledged there were no real problems during the two years before their relocation. (July 20, 2022 GAL Report.)

{¶12} The GAL recommended maintaining Mother as the residential and custodial parent and the current visitation arrangement. The GAL stated it was in the children's best interests to relocate to Alabama with Mother because "she has been their residential parent their entire lives and she has always permitted [Father] access and visitation with both children." (July 20, 2022 GAL Report.)

{¶13} The GAL sought the appointment of independent counsel for the child K.J.F., which was granted. The court indicates in its judgment granting this motion that the child's wishes are adverse to the GAL's recommendations. (July 25, 2022 Judgment.)

{¶14} Father moved for an in camera interview of K.J.F. The change of custody trial was held September 30, 2022. The child was interviewed after the hearing on the merits. There is no transcript of the in camera hearing, and there is nothing in the record indicating whether it was recorded.

{¶15} The trial transcript reveals the following. Mother testified first on cross-examination. She said K.J.F. was twelve years old at the time of the hearing and in sixth grade. His sister was in the eighth grade and was fourteen years old at the time. Mother testified both children have always lived in the Columbiana County area with her and have attended the same school. Father has also lived in that area in a neighboring school district. (September 30, 2022 Tr. 5-8.)

{¶16} Although Father was not the biological father of K.J.F.'s older sister, he filled that role and Mother agreed for him to have parenting time with her. (September 30, 2022 Tr. 8-9.) Mother married her current husband in 2020. She acknowledges he has a history of alcohol use. He also occasionally smokes marijuana. She was aware he had a prior felony criminal charge of possession of drugs and violated his probation by testing

positive for drugs.  He had to serve 60 days in the county jail.  She married him the day after he was released.  (September 30, 2022 Tr. 11-12.)

{¶17}  Mother's husband quit his local job with his family business because the company changed his position from salaried and made his job hourly.  He felt disrespected.  So, he accepted a job in Alabama.  Mother left a job earning $15 an hour and had a new job in Alabama for about six months, but has since become unemployed.

{¶18}  Mother recalls telling Father about their plan to relocate in June at her daughter's birthday party.  She said her husband moved at the end of July, and they all sat down to discuss the move about a week or two before then.  She planned for Father to continue to see the kids and said they discussed it, but did not reach a formal agreement about visitation.  Mother said she would never keep the children from him.  (September 30, 2022 Tr. 15-18.)

{¶19}  She planned to bring the children back to Ohio once a month for his parenting time, and she said she has done that since moving.  It is a ten hour-drive each way, which includes three stops.  Her parents still live in Ohio, who the children would see about once a month before the move.  (September 30, 2022 Tr. 19-22.)  Father also has relatives in Ohio including grandparents, who the children saw less frequently after they relocated.  (September 30, 2022 Tr. 23-25.)  K.J.F. also has two half-brothers, Father's two other children, who were ten and seven years old at the time of the hearing.  The boys are relatively close with one another.

{¶20}  Mother testified that when they lived in Ohio, Father rarely visited with the children mid-week, even though it was provided for in the parties' agreement.  After the move, K.J.F. often contacted his father and spoke to him through his gaming console.  (September 30, 2022 Tr. 26.)

{¶21}  Mother described Father as a good parent who has been regularly involved in their children's lives.  Mother also agreed he has been a father to her daughter even though he is not her biological father.

{¶22}  Mother also testified that she has cohabited with her current husband for the majority of her children's lives for about 12 years, since the kids were one and two years old.  (September 30, 2022 Tr. 37-38.)  She believes they have a good relationship

with her current husband.  They are not aware he went to jail or that he uses marijuana. (September 30, 2022 Tr. 40-42.)

{¶23} K.J.F. has an individualized education program, which affords him extra assistance at school.  She believes the services he needs are better at his new school in Alabama, explaining he gets more one-on-one time in Alabama.  He also plays football and basketball, but he did not get to play the year of the move because the timing of tryouts.  K.J.F. told her that he wanted to see his father more.  (September 30, 2022 Tr. 50-52.)

{¶24} On direct, Mother introduced numerous text messages showing she keeps Father up to date regarding the children's sports and school schedules, photographs, and illnesses.  She described how both children are excelling in the Alabama school district and generally doing well and have adjusted to life in Alabama.  K.J.F. has new friends and is active in sports there, including football and track.  (September 30, 2022 Tr. 215-217.)

{¶25} Father testified on direct examination that he has been acting as a father toward Mother's daughter since she was an infant.  He was dating Mother at the time. She calls him dad, and he has attended father-daughter dances with her.  She has her own bedroom at his house.  Father lives with his wife and their two sons, who are ages ten and eight.  K.J.F. has his own room there as well, but when he visits, he likes to share a room with his younger brothers.  He is close with them.  K.J.F. also has a close relationship with his grandmother, Father's mother, who lives nearby and his stepmother's parents.  (September 30, 2022 Tr. 56-61.)

{¶26} According to Father, he and Mother had a good relationship when she lived in Ohio.  She would sometimes contact him for assistance when the children were having behavioral issues, and he regularly had the kids every other weekend during the school year and every other week during the summer months.  Father resides in the neighboring school district, but K.J.F. has friends in that district, and Father coaches athletics in that district.  (September 30, 2022 Tr. 62-66.)

{¶27} Father testified that Mother did mention her husband may be taking a job in Alabama, but Father said he did not know they were actually moving until the day before it happened.  Since they relocated, he said he has seen the children, but not as much as

he had, and not on a regular basis. It is difficult for him to visit them there because of the long distance and since he and his wife both have jobs and their sons are in sports. His visits with K.J.F. and his sister have been limited as a result of the relocation. Even if the court split up the two children, Father wants to continue regular visitation with K.J.F.'s sister. (September 30, 2022 Tr. 73-74, 79-81, 86.)

{¶28} Father left his full-time job to return to school. He has since finished and started his own company, but it was not successful. His most recent employer has had difficulty fulfilling his child support payments, so Father began making them directly. (September 30, 2022 93-94.) On cross-examination, Father agreed he continues to have a lot of access to K.J.F. They talk a few times a week. Both children are on individualized education programs. K.J.F. has attention deficit/hyperactivity disorder. Mother, however, took care of most of the schooling issues and medical appointments for both K.J.F. and his sister. (September 30, 2022 Tr. 108-109.)

{¶29} Father does not have major concerns about Mother's husband or his treatment of the children. Father believes K.J.F.'s relationships with his siblings and extended family members have been diminished since the move and that it is in his son's best interest to live with Father, his wife, and two half-brothers. K.J.F. has friends who live in Father's neighborhood as well.

{¶30} K.J.F. and his sister have always resided with one another and have consistently visited with Father together. She had her last name changed to be the same as Father's, and she has been aware since then that he is not her biological father. (September 30, 2022 Tr. 124-126.)

{¶31} Father's wife also testified. She has been married to Father for ten years. She described K.J.F.'s and her two sons' relationship as inseparable. They play video games, ride bikes, and play outside together. Her parents have also been active in the kids' lives. They watch them sometimes and take them on vacation. (September 30, 2022 Tr. 136-140.)

{¶32} Mother's husband testified. He explained that the drugs for which he was arrested were found in his company truck and did not belong to him. He also said he uses marijuana for his arthritis and anxiety. He does not use it near the children, and they do not have access to it. He has been with Mother since the children were one and three

years old. He taught them how to ride bikes when they were younger. He believes he has a good relationship with both. (September 30, 2022 Tr. 158-162.)

{¶33} He moved to Alabama for his new job. He said he is earning $35,000 more a year now than when he worked in Columbiana. (September 30, 2022 Tr. 168.) He has two adult children and has a lifelong spousal support obligation since one of his children was deemed unable to care for himself. He uses marijuana for his arthritis pain relief because other medications did not help him. (September 30, 2022 Tr. 181-2.)

{¶34} Mother testified on direct that she worked briefly after the move, but she has since become a stay-at-home mother. She intends to work again eventually but had no plans at the time of the hearing. She had previously worked part time for a cleaning company. She explained that the kids were sick the few times the children did not visit Father since they moved. Mother introduced photocopies of text messages she had sent Father notifying him about the children's illnesses, activities, and school calendar. Mother also introduced a copy K.J.F.'s report cards showing he earned all A's and one B at his new school. She also introduced photographs depicting their new home with a swimming pool and basketball hoop. She said the children are happy and well-adjusted to life in Alabama and that K.J.F. had made several friends there. (September 30, 2022 Tr. 198-215.)

{¶35} During Mother's testimony, the court indicated it was going to break for the day for the court to conduct the in camera interviews. (September 30, 2022 Tr. 215.)

{¶36} The transcript reflects they went off the record, and when they returned on the record, the judge stated he had conferenced with the parties' attorneys regarding the further scheduling of evidence. When mother's attorney is asked if she intended to present further evidence, she stated she had "thought about calling the Guardian Ad Litem, but we are going to put [the] Court report [in] as an exhibit then." (September 30, 2022 Tr. 221-222.)

{¶37} The trial court concluded the proceeding indicating it would conduct the in camera interviews at that point with only the GAL and K.J.F.'s counsel present. (September 30, 2022 Tr. 223-224.)

{¶38} The trial court issued its decision on October 25, 2022 and granted Father's motion regarding K.J.F. It named Father the residential parent of K.J.F., and determined

Mother would continue to have custody of her daughter. The court also ordered the parties to have long distance visitation with the child who is not living with them and ordered the parties to prepare child support calculations. In support of its decision, the trial court found that because there had never been an adjudication designating either parent as K.J.F.'s residential and legal custodian, both parents were equal under the law. And thus, the determination is based on the best interests of the child as set forth in R.C. 3109.04(B)(1). (October 25, 2022 Judgment.)

**{¶39}** Upon addressing the best interest factors, the court found all factors were equal except three. The court found that K.J.F. expressed a strong desire to live with his father. The court also found that K.J.F. had better and more significant relationships with family members in Ohio rather than Alabama. Last, the court found K.J.F. was better adjusted to his school and community in Columbiana County rather than Alabama, where he had lived for less than a year. (October 25, 2022 Judgment.) The court issued its final judgment ordering child support in December of 2022. (December 20, 2022 Judgment.)

**{¶40}** Mother raises one assignment of error. Father has not filed a brief.

### Assignment of Error

**{¶41}** Mother's sole assignment of error asserts:

"The trial court erred and abused its discretion by granting legal custody of [K.J.F.] to Plaintiff-Appellee [Father] as such decision was against the manifest weight of the evidence and was not supported by clear and convincing evidence that such decision was in [the child's] best interest."

**{¶42}** Mother contends the court abused its discretion in granting father's motion for custody. She claims the court erred in its best interest analysis by failing to address numerous considerations. First, she claims the court erred by failing to employ the necessary consideration that Mother was the primary caregiver of K.J.F. since his birth 13 years earlier and she has been his primary caregiver all his life.

**{¶43}** Mother also claims the court failed to consider that since her relocation and her husband's increased income, she is able to be a stay-at-home mother, which she could not do before. Mother also claims the court failed to consider the reduced bond K.J.F. will have with his sister, and the negative effect it will have on her as well. The court also failed to consider that K.J.F. will have to enter a third school district in the same

year, which likely will have negative effects on his learning. She also claims that Father has had difficulty or issues fulfilling his child support obligations.

**{¶44}** Last, Mother takes issue with the court's failure to address the GAL's investigation and recommendation and the shortening of the hearing without the GAL's testimony. For all of these reasons, she claims the court's best interest analysis constitutes an abuse of discretion and should be reversed.

**{¶45}** Upon treating both parents as standing on equal ground, the court invoked the best interest of the children test in R.C. 3109.04(B)(1) and (F)(1). These sections state:

> (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * *, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children * * *, the court shall consider all relevant factors, including, but not limited to:

> (a) The wishes of the child's parents regarding the child's care;

> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

> (d) The child's adjustment to the child's home, school, and community;

Case No. 23 CO 0004

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

(i) Whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶46}** Appellate courts review best interest determinations for an abuse of discretion. An abuse of discretion occurs if the court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When reviewing for an abuse of discretion, the fact that the reviewing court would have reached a different result is not enough to find error. *Id.* "[R]esults can often vary in different cases, as there can be more than one reasonable decision from which the trial court could choose." *Sokolowski v. Sokolowski*, 7th Dist. Jefferson No. 16 JE 0028, 2017-Ohio-9216, 101 N.E.3d 1105, ¶ 41, quoting *Yancey v. Yancey*, 7th Dist. Mahoning No. 07 MA 33, 2007-Ohio-5045, ¶ 25.

**{¶47}** The function of the court of appeals is not to weigh the evidence, but to " 'ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.' " *Foxhall v. Lauderdale,* 11th Dist. Portage No. 2011-P-0006, 2011-Ohio-6213, ¶ 28, quoting *Clyborn v. Clyborn,* 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

**{¶48}** Although the trial court was required to *consider* all relevant factors, the statute does not require a court to address each listed factor considered in its written

Case No. 23 CO 0004

decision. *In re J.K.*, 7th Dist. Carroll No. 14 CA 899, 2014-Ohio-5502, ¶ 31. Moreover, a court is presumed to consider the factors absent evidence to the contrary. *Id.* citing *In re Henthorn,* 7th Dist. Belmont No. 00BA37 (Nov. 28, 2001).

**{¶49}** Here, the court identified the best interest test and the correct statute before setting forth its analysis. The court also noted that because Mother had been the residential parent via statute, instead of judicial allocation, it was required to treat the parties equally under the law. The trial court found all best interest factors were essentially equal except three before explaining why these three factors warranted granting Father's motion. The court found K.J.F. expressed a strong desire to live with his father; K.J.F. had more significant relationships with family members in Ohio; and it also found he was better adjusted to his school and community in Columbiana County rather than Alabama. (October 25, 2022 Judgment.)

**{¶50}** We agree the court did not mention K.J.F.'s reduced bond with his mother and sister that may result from this change. It likewise did not mention that his mother has always been the child's primary caregiver, that she is now a stay-at-home parent, or that he would have to enter a third school district, which may be detrimental. These considerations are certainly relevant and important. Nevertheless, these items were presumably encompassed by the court's statement that all factors were essentially equal. These considerations arguably fall under the statutory considerations a court is required to consider, including the child's interrelationships with his parents and siblings and the factor requiring the court to consider the child's adjustment to his home, school, and community. As for Mother's ability to be a stay-at-home mother, this was likely encompassed by the court's consideration of K.J.F.'s "interaction and interrelationship with [his] parents, siblings, and any other person who may significantly affect the child's best interest * * *." R.C. 3109.04(F)(1)(C).

**{¶51}** As for Appellant Mother's allegation that Father had difficulty fulfilling his child support obligations, there was some testimony in this regard, but the evidence and argument at the hearing did not establish that he "failed to make all child support payments, including all arrearages, that are required of [him]." Instead, he testified a certain employer had difficulty fulfilling his support obligation. Father also testified he had the support come directly from his bank account during one period of time. Thus, although

there were issues with child support payments, there was nothing evidencing he "failed to make all child support payments, including all arrearages, that are required of [him.]" R.C. 3109.04(F)(1)(g).

**{¶52}** Finally, Mother takes issue with the court's failure to address the GAL's recommendation and the shortening of the hearing without the GAL's testimony. Mother claims the court was required to consider the report pursuant to Sup.R. 48.06(C)(2) and that it did not address the report in its analysis or decision.

**{¶53}** Sup.R. 48.06(C)(2) states: "The court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit." Rules of Superintendence do not have the same force as statutes and do not generally create substantive rights in individuals. *In re J.S.*, 12th Dist. Butler Nos. CA2016-07-141 and CA2016-07-142, 2016-Ohio-7833, ¶ 12. Thus, noncompliance with a rule of superintendence is generally not grounds for reversal. *In re. B.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 57.

**{¶54}** As alleged, the trial court judgment acknowledged the GAL report was admitted, but the court does not indicate whether it considered the recommendation of the GAL and does not mention the substance of what the GAL recommended. Notwithstanding, the GAL recommended Mother continue as the child's residential and custodial parent. Her recommendation is based on the premise that Mother has been the custodial and residential parent since K.J.F.'s birth. The GAL stated it was in the children's best interests to relocate to Alabama with Mother because "she has been their residential parent their entire lives and she has always permitted [Father] access and visitation with both children." (July 20, 2022 GAL Report.)

**{¶55}** Thus, the court was required to consider it here since it was admitted. While there is nothing showing the court considered the GAL report and recommendation, there is also nothing evidencing it did not. Although the court does not explicitly reference each of the issues or considerations raised by Mother in her brief, it was not required to list every item it considered when making its decision.

**{¶56}** Regarding the shortened duration of the hearing, Appellant Mother's attorney agreed on the record it was acceptable. And although she mentioned she was

Case No. 23 CO 0004

going to call the GAL to testify, her attorney also agreed to have the GAL report submitted instead. (September 30, 2022 Tr. 221-222.)

{¶57} Furthermore, we also acknowledge certain courts have held that courts "should give strong consideration to whether one of the parents was the primary caregiver for the child or children." *In re N.M.*, 2nd Dist. Montgomery No. 24110, 2010-Ohio-5048, ¶ 23, quoting *In re Maxwell*, 8 Ohio App.3d 302, 456 N.E.2d 1218 (1982). We agree this bond and continuation of care is paramount to a child's development and relevant when assessing the best interest of the child. However, it is not a presumption in the law or one of the listed factors in R.C. 3109.04(F). Further, there is nothing evidencing the court did not consider this detail when assessing K.J.F.'s bond and relationship with both parents.

{¶58} Mother was the residential parent of K.J.F. for more than 12 years. Furthermore, the GAL found, and the record shows, that she has consistently and historically made the children available for parenting time with Father and kept him involved with the children and informed about matters in the children's lives. Since they relocated, she attempted to maintain a monthly visitation with him during the school year, and she would even drive the children from Alabama to Ohio. Her efforts, however, were thwarted on occasion by illnesses.

{¶59} Notwithstanding Mother's efforts and commitment to her son, the court granted Father's motion based on K.J.F.'s connections with his family and friends in Columbiana County, as compared with Alabama, as well as the child's stated desire to live with his father, expressed during the in camera interview. There is no doubt that K.J.F. has significant connections to his family members in Alabama as well, but he simply had fewer friends and family members in Alabama since he spent the first 12 years of his life in Ohio. Absent more, we cannot find the court failed to consider his Mother's status as residential parent for 12 years and her commitment to her son. The evidence was before the court. The trial judge was in the best position to determine the credibility of the witnesses, weigh the evidence, and consider the best interest factors.

{¶60} The record shows K.J.F. has two caring parents who are capable of meeting his needs, and both demonstrated a commitment to his well-being and expressed a desire to be his residential parent. Given the testimony, and the presumption the court

is to view both parents on equal ground when awarding custody, the trial court did not abuse its discretion in awarding custody to Father. We must defer to the trial court's discretion in this matter since it did not act in an unreasonable, arbitrary, or unconscionable manner. Accordingly, we conclude Mother's sole assignment of error lacks merit.

## Conclusion

**{¶61}** Based on the foregoing, we cannot find the trial court's decision is unreasonable, arbitrary, or unconscionable. Accordingly, we find no error and affirm.

D'Apolito, P.J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**